## CARROLLTON PRESS BRICK CO. v. DAVIS.

(Court of Civil Appeals of Texas. Dallas. March 29, 1913.)

1. EVIDENCE (§ 317*)—ADMISSIBILITY—HEARSAY.

In an action on notes by an indorsee, the testimony of a private banker that he was told that a draft drawn by his bank to the order of the payee was used by the indorsee in payment for one of such notes, and that another draft was so used, it appearing however that he had no personal knowledge of such payment, was hearsay and inadmissible to establish the payment of a valuable consideration by the indorsee.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1174–1192; Dec. Dig. § 317.*]

2. APPEAL AND ERROR (§ 1051*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

The admission of such testimony was harmless, where the other evidence in the case clearly showed that the notes were purchased by the indorsee before maturity in due course of business for a valuable consideration and without notice of defenses or offsets.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. § 1051.*]

3. BILLS AND NOTES (§ 525*)—ACTIONS—SUFFICIENCY OF EVIDENCE.

In an indorsee's action on notes, evidence aside from hearsay testimony erroneously admitted *held* to clearly show that the indorsee purchased the notes before maturity in due course of business for a valuable consideration and without notice of defenses.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1832–1839; Dec. Dig. § 525.*]

4. BILLS AND NOTES (§ 367*)—DEFENSES AVAILABLE AGAINST BONA FIDE PURCHASERS.

A note, the consideration of which is the doing of business in the state by a foreign corporation without any permit from the Secretary of State to do business, is enforceable by an innocent purchaser for value before maturity.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 947, 948; Dec. Dig. § 367.*]

5. BILLS AND NOTES (§ 497*)—ACTIONS—BURDEN OF PROOF.

In an indorsee's action on notes, the consideration of which was claimed to be the doing of business in this state by a foreign corporation having no permit to do business, where the evidence showed practically without dispute that the indorsee was an innocent purchaser for value before maturity, the burden was on defendant to show that he purchased with knowledge that such corporation had no permit to do business, and this burden was not met by simply showing that it had no such permit.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1448, 1675–1681, 1683–1687; Dec. Dig. § 497.*]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action originally instituted by Damon W. Davis against Carrollton Press Brick Company and others, in which Matilda Davis, executrix, was substituted as plaintiff. From a judgment for plaintiff, defendant named appeals. Affirmed.

Alex. F. Weisberg and Spence, Knight, Baker & Harris, all of Dallas, for appellant. Burgess, Burgess & Chrestman, of Dallas, and Harmon J. Bliss, of St. Louis, Mo., for appellee.

TALBOT, J. This suit was originally instituted by Damon W. Davis, who died before trial, and his widow, Mrs. Matilda Davis, appellee, as his executrix, and who resides in the state of Illinois, afterwards made herself plaintiff and prosecuted the suit to final judgment. The suit was brought to recover of C. E. Jackson, Andrew Jackson, and W. T. Squibb, as makers, and of the appellant Carrollton Press Brick Company, a corporation, incorporated under the laws of the state of Texas and having its principal place of business at Carrollton, Tex., as indorser, the balance of principal, interest, and attorney's fees on two promissory notes of $1,000 each, executed by said defendants in favor of Ross-Keller Triple Pressure Brick Machine Company, a corporation incorporated under the laws of the state of Missouri and having its principal place of business in said state, and owned and held by plaintiff, as executrix of of the esstate of the said Damon Davis, deceased. The suit was also to foreclose a contract or mortgage lien, given to secure the payment of the notes sued on, upon the property described in plaintiff's petition. The defendants pleaded general and special exceptions, a general denial, and specially, so

'far as is necessary to state, that the real' owner of the notes sued upon by Matilda Davis, executrix, was the said Ross-Keller Company, the original payee in said notes, and that said notes originated in a transaction which constituted a doing of business, in the state of Texas, by said foreign corporation, which, at the time of said doing of business in the state of Texas, did not have a permit to do business in this state, and had not complied with the provisions of the statutes of the state of Texas relative to foreign corporations seeking to do business in this state; that, should plaintiff in the court below recover anything upon the notes sued upon by her, it should have judgment against the said plaintiff by way of set-off upon two certain notes executed by said Ross-Keller Company, in favor of one J. H. Maltpress, and held at the time of the filing of this suit, and continuously since then, by said Carrollton Press Brick Company, the said Carrollton Press Brick Company alleging that said Damon W. Davis was not an innocent purchaser of said notes, and had not in truth and in fact purchased said notes at all, but that the assignment or transfer of said notes to him was nothing but a sham and simulated transfer, and that the real ownership of said notes has at all times remained and still is in said Ross-Keller Company, and that the said Damon W. Davis paid no value or consideration for said notes, and had knowledge of the fact, or ought to have had knowledge, that the notes sued upon by the plaintiff were subject to the defenses that they originated in a transaction which constituted an illegal doing of business in the state of Texas by a foreign corporation without a permit. Issue was joined on all of the foregoing allegations by appropriate pleadings. The case was tried on November 16, 1911, by the court without the intervention of a jury, and judgment rendered in favor of plaintiff upon the notes sued on, and against defendants upon the notes pleaded by way of set-off from which judgment appellant, Carrollton Press Brick Company, alone appealed.

The notes sued upon by plaintiff are part of the consideration given by Carrollton Press Brick Company to Ross-Keller Triple Pressure Brick Machine Company, under and by virtue of that certain contract set out in plaintiff's first amended original petition, dated June 9, 1906. . Under the terms of said contract, the Ross-Keller Triple Pressure Brick Machine Company undertook to furnish certain machinery and equipment necessary to erect and equip a brick-making plant, and undertook to furnish a competent man to superintend the erection, starting, and testing of said plant or machinery, and to perform a test of said machinery after the erection of the plant, by making one kiln of brick at the rate of 2,000 per hour; said contract providing that all of the foregoing matters were to be done and performed by the said Ross-Keller Triple Pressure Brick Machine Company, at Carrollton, in the county of Dallas, state of Texas. It appeared from the face of the contract that said Ross-Keller Triple Pressure Brick Machine Company was a corporation, duly organized under the laws of the state of Missouri.

[1] Appellant's first, second, and third assignments of error are grouped in the brief and complain of certain testimony of the witness F. F. Axtell, touching the purchase by Damon W. Davis of the notes sued on, and the payment of the purchase money therefor. This witness, after stating that he was a private banker, testified as follows: "I only know that my bank on October·15, 1907, sent a draft at the request of Damon W. Davis for $1,000, payable to the order of A. E. Camp, secretary (and was told that it was in payment for a note which Mr. Davis had purchased, and that on November 7, 1907, Damon W. Davis purchased a draft from my bank for $972.35, payable to the order of Ross-Keller Triple Pressure Brick Machine Company, both of which drafts were returned to the bank, indorsed by Ross-Keller Triple Pressure Brick Machine Company, by A. E. Camp, secretary). That portion of the above testimony in parentheses was objected to by appellant on the ground that it appeared therefrom that the matters contained therein constituted hearsay and not the personal knowledge of the witness. The witness further testified in effect that the drafts referred to in his testimony above were payments made by the said Damon W. Davis, through his bank to the Ross-Keller Triple Pressure Brick Machine Company for two notes purchased by Davis from said company. This latter testimony was objected to by appellant on the ground that it was disclosed in prior and other testimony of the witness that he had no personal knowledge of the matters about which he testified, and that his testimony in regard thereto was based upon hearsay. The proposition advanced is: "Where one of the controverted issues in the case is whether plaintiff is the innocent purchaser for value, before maturity, of negotiable paper, so as to cut off the defense that said paper originated in a transaction which constituted any legal doing of business, by the payee, a foreign corporation, without· a permit in the state of the forum, and where plaintiff seeks to show that her testator paid value for said paper, by paying two certain drafts drawn on said testator, for the purchase price of said notes, it is error for the court to permit a witness to testify that said drafts were drawn and paid to cover the purchase price of said notes, over·the objection of defendant, when in the deposition of said witness, and in the prior and other testimony of said witness, it appears that said witness

has no personal knowledge of such facts, and was not present at the time of the transaction, and is testifying simply to the hearsay statements of others."

[2, 3] It is apparent that the testimony objected to was hearsay and doubtless inadmissible; but in view of other and ample evidence introduced by appellee showing that her testator, Davis, was an innocent purchaser for a valuable consideration before maturity of the notes and contract sued on, it may safely be said the error was harmless. Drafts corresponding with those described in the testimony of the witness Axtell were introduced in evidence, and Damon W. Davis, by deposition, testified: "I never had any business with the Ross-Keller Triple Pressure Brick Machine Company except the purchase of the two notes sued on. I bought these two notes and the contract was assigned to me. Mr. Camp, knowing that I loaned money from time to time, told me that the Ross-Keller Triple Pressure Brick Machine Company, of which he was the president had these two notes which they desired to sell for cash to raise funds; that he considered them perfectly good, as they were secured by a conditional sale contract upon machinery which had been sold for $7,000; that if I would buy the notes the Ross-Keller Triple Pressure Brick Machine Company would give me the benefit of the accrued interest. I accepted this proposition to buy the notes as soon as I had the ready funds. I purchased the nine months' note October 15, 1907, and that note was delivered to me by mail. I then had my bank in Harvard, Ill., conducted by Frank F. Axtell, under the name of Axtell's Exchange Bank, now the First State Bank of Harvard, issue a draft for $1,000 payable to the order of E. A. Camp, secretary for the Ross-Keller Triple Pressure Brick Machine Company, which I had the bank mail to the Ross-Keller Triple Pressure Brick Machine Company. The twelve months' note was purchased by me on November 7, 1907, in about the same manner which I paid for by draft of that date payable to the order of the Ross-Keller Triple Pressure Brick Machine Company. I paid for the nine months' note of $1,000 which bore interest from its date at 6 per cent. per annum, the sum of $1,000 by draft issued by Axtell's Exchange Bank located at Harvard, Ill., for the sum of $1,000. This draft I now have in my hands, and I identify it as being the same draft and which is now attached to the deposition of Frank F. Axtell taken in this cause. For which reason I cannot attach said draft to my deposition. I paid for the twelve months' note which bore interest from May 17, 1907, at 6 per cent. per annum, the sum of $972.35. The consideration for this note was paid by draft issued by my bank, Axtell's Exchange Bank, payable to the order of the Ross-Keller Triple Pressure Brick Machine Company, for said amount. This draft which I have just described, I now hold in my hand and identify as being the same draft which I purchased to pay the consideration for said note. This draft I cannot attach to my deposition for the reason that it is attached to the deposition of Frank F. Axtell, taken in this cause. The two drafts which I have described are each marked by the notary from whom my deposition and the deposition of Frank F. Axtell in this case are taken, as plaintiff's 'Exhibit A' less and plaintiff's 'Exhibit B,' respectively, for identification. The contract between the Ross-Keller Triple Pressure Brick Machine Company and Carrollton Press Brick Company was assigned to me. The assignment is in writing. The assignment attached to the contract for the sale of the machinery was sent to my attorneys in Dallas, Texas, to be filed in this case. I have in my hand a carbon copy of this assignment which I identify as being the assignment in question; the original being signed Ross-Keller Triple Pressure Brick Machine Company, by John P. Camp, President, and attested by E. A. Camp, Secretary, with the corporate seal of the Ross-Keller Triple Pressure Brick Machine Company affixed. I ask the notary to mark this assignment plaintiff's 'Exhibit C,' which he has done. I do not know by whom, or when, or where, the original assignment was prepared. They were sent to me by the Ross-Keller Triple Pressure Brick Machine Company. There was no separate consideration. When I bought these notes, it was agreed that I also bought the contract which was the security for the notes. The notes were delivered to me when I bought them and remained in my possession until a short time before they became due, when I left them with Axtell's Exchange Bank of Harvard, Ill., for collection, with instructions to have them protested for nonpayment. I paid protest fees amounting to $1.50. After the notes were returned protested, they were turned back to me by said bank and remained in my possession until about April 1, 1909, when they were sent to John P. Camp for collection. Mr. Camp had the notes until about the middle of the following month, at which time I directed him to turn them over to my counsel, Mr. Bliss, for suit, and they have been in his possession or the possession of the attorneys bringing this suit ever since. Mr. Camp agreed with me when I bought these notes that he would personally attend to the collection of them, if they were not paid when due. On account of my age and not being actively engaged in business, I didn't wish to be troubled with the collection of them, and when he didn't get the money for me, I directed him to turn them over to Mr. Bliss, whom I have paid to look after my interests in the matter and collect the money due me. No person has had any interest in either of the said notes except myself, since I bought them. I am the owner of

them now. I have been informed that the defendants are trying to set up some claims against the Ross-Keller Triple Pressure Brick Machine Company to offset my claim. I never heard of such a claim until about the first of the present year, when Mr. Bliss advised me that such a claim was being made. I did not have any knowledge of any character of claim, offset, or defense against said notes at the time I purchased them."

John P. Camp, a witness for the plaintiff, testified regarding the purchase of the notes by the plaintiff: That, from the fall of 1907 to January, 1910, he was president of the Ross-Keller Company, and also performed the duties of manager; that he knows the plaintiff, Damon W. Davis, and had known him for 28 years; that, acting for the Ross-Keller Company, he sold the two notes sued on to the plaintiff, Damon W. Davis, the first note for the sum of $1,000, the second note for the sum of $972.35, the sale of the first note having been made on October 15, 1907, and the second note on November 7, 1907; and that the payment for the notes was made by draft. He further says, regarding said two notes and efforts to collect the same, as follows: "The two last-mentioned notes were delivered to Mr. Davis, when he bought them, and, so far as I know, they remained in his possession up to about April, 1909. I did not hold the notes or have them in my custody from the time they were bought by Mr. Davis until about April 1, 1909, at which time I received them from Axtell's Exchange Bank of Harvard, Ill., with the request that I collect them for Mr. Davis, and I accordingly endeavored to collect them, but without success. About the middle of May following, under Mr. Davis' instructions, I turned the notes over for suit to Davis' attorney, H. J. Bliss." The witness further says: "No person was present at the negotiations and sale of the contract and notes sued on, except Mr. Davis and myself. The transaction was begun by personal interview had by myself with Mr. Davis at Harvard, Ill., and completed by the transfer and indorsement of the notes at St. Louis at the time of the actual sale of the notes. The inducement offered was the amount of the discount; that is to say, that on the nine months' note Davis was to receive the difference between $1,000 and the face of the note with interest, and on the other note the difference between the face of the note with interest and $972.35. I indorsed the notes. Mr. Davis requested that I do indorse them." In connection with the efforts of the Ross-Keller Company to collect the notes sued on, the said witness says: "In addition to the above (referring to the letters referred to in appellant's brief), I received a letter dated April 1, 1909, from Axtell's Bank at Harvard, Ill., inclosing to me the notes for collection, which letter I attached, and mark 'Exhibit G.' I, myself, had the Ross-Keller Company carry on the correspondence hereto attached, because, as Mr. Davis was an old friend of mine, I wanted to have him get his money out; besides, I was personally liable on the notes as indorser."

In addition to the testimony quoted, the books of Ross-Keller Company were introduced in evidence, and they accorded with the testimony of the witness Davis and Camp and show the transaction very clearly. In regard to the offset pleaded by appellant, Damon W. Davis testified that he "did not have any knowledge of any character of claim, offset, or defense against said notes" at the time he purchased them. Independently, therefore, of the testimony complained of by appellant in its assignment here under consideration, the evidence very clearly shows that the notes sued on were purchased by appellee's testator, Damon W. Davis, before maturity in due course of business for a valuable consideration; and, further, that at the time of such purchase he had no notice or knowledge of the offset set up by appellant. So that when all the testimony adduced is considered it is manifest that appellant suffered no injury by the admission of the hearsay testimony of the witness Axtell, and the action of the court in this respect furnishes no ground for a reversal of the case. In reference to the letters introduced by appellant showing that Ross-Keller Triple Pressure Brick Machine Company, after the sale to Davis, attempted to collect the notes in suit in view of the undisputed testimony in explanation thereof, can have but little or no probative force in the effort of appellant to establish that said sale was simulated and mere sham to enable said company to sue upon and collect said notes through Davis. It does not appear that Davis knew that said letters had been written, and why they were written is very satisfactorily accounted for by the undisputed fact that Camp, secretary of the company, had obligated himself to Davis, as shown by the testimony quoted, to see that he (Davis) sustained no loss in his purchase of said notes.

The other assignments of error present the same question, and are to the effect that the "court erred in rendering judgment in favor of the plaintiff against this defendant, for the reason that where a foreign corporation in fact had no permit to do business in the state of Texas, but at the time it had no such permit did transact business in the state of Texas, and where the plaintiff, who claims to be the purchaser for value of negotiable promissory notes taken by said corporation as a part of the wrongful transaction, bought said notes with knowledge that said corporation was not incorporated under the laws of the state of Texas, or with knowledge of such facts as ought reasonably to put him on notice of said matter, and also with knowledge of such facts as ought reasonably to put him on inquiry that said facts originated in a transaction involving the trans-

action of business in Texas, the burden of proof is upon the plaintiff to show that at the time he purchased said notes he did not know that said corporation, at the time of their execution, had no permit to do business in the state of Texas; and since plaintiff introduced no evidence showing want of knowledge, the court should have rendered judgment in favor of the defendant."

[4, 5] Conceding simply for the sake of argument that the transaction out of which this litigation arose was not of a character of interstate commerce, but constituted the doing of such a business in this state, within the meaning of our statute, as made it obligatory upon the Ross-Keller Triple Pressure Brick Machine Company, as a foreign corporation, to obtain from the Secretary of State a permit to transact business in this state, yet the court did not err in rendering the judgment from which this appeal is prosecuted. It is true the evidence fails to show that the Ross-Keller Triple Pressure Brick Machine Company had a permit to do business in this state at the time of the transaction in question, but the notes sued on and given in that transaction by appellant are not void by reason of that fact, and a suit for their collection may be maintained by an innocent purchaser, and indorsee of said notes for value before maturity, in this state. Such, according to the trial court's findings, amply sustained by the evidence, is the position occupied by appellee, and it was not essential to her right of recovery that she go further and show that, at the time her testator purchased the notes, he did not know that the original payee, Ross-Keller Company, at the time of their execution, had no permit to do business in the state of Texas. Appellant having assailed the right of the appellee to maintain this suit, and the evidence practically without dispute showing that appellee stood in the position of an innocent purchaser for value before maturity of said notes, the burden of proof was upon it to show that appellee's testator purchased the notes with knowledge of the fact that Ross-Keller Company had no permit to do business in this state, and this burden was not met and discharged by simply showing that said company had no such permit. There is no testimony in the record that would have authorized a finding that Damon W. Davis knew or was chargeable with notice of the fact that the Ross-Keller Triple Pressure Brick Machine Company did not have a permit to do business in Texas. In view of apparently conflicting decisions of this state upon similar questions, there may have been some doubt at one time as to whether an innocent purchaser for value of a negotiable note, given to a foreign corporation not having a permit to do business in the state of Texas, could sue and recover on said note in the courts of Texas when the corporation itself could not maintain a suit thereon in said courts; but the right of such a purchaser to so do was definitely settled by the Supreme Court in the case of State Bank of Chicago v. Holland, 103 Tex. 266, 126 S. W. 564. In that case the court held that "a note given to a foreign corporation which has not complied with Rev. Stat. 1895, arts. 745, 746, requiring foreign corporations to procure a permit to transact business and prohibiting a foreign corporation from suing on a contract unless it has obtained a permit, is not void and is enforceable in the hands of an innocent indorsee for value before maturity."

We do not concur in the view of counsel for appellant, as heretofore indicated, that under the facts disclosed by the record Damon W. Davis was affected, as a matter of law, with knowledge that the Ross-Keller Company did not have a permit to do business in Texas, or at least that the burden devolved upon appellee to show by affirmative proof that he did not have such knowledge. Our conclusion is that the judgment of the court below is just and correct, that no error has been committed in the trial of the case, and it is therefore affirmed.

Affirmed.