### STATE BANK OF CHICAGO v. W. J. HOLLAND.

No. 1998. Decided March 30, 1910.

**Foreign Corporation—Permit to do Business—Negotiable Note—Innocent Purchaser.**

An innocent purchaser of a negotiable note given to a foreign corporation not having a permit to do business in Texas, for the construction of a factory in the State, may sue and recover thereon in the Courts of Texas. The statute (Rev. Stats., art. 746) while denying the payee the right to sue thereon, does not make the note void.

Question certified from the Court of Civil Appeals for the Sixth District in an appeal from Upshur County.

*W. W. Sanders* and *Warren & Briggs,* for appellant.—Even if, under the facts, the payee in the notes, viz.: The Chicago Building & Manufacturing Company, was engaged in a business that required it to take out a permit to do business in Texas, the note executed

by W. J. Holland was not rendered void thereby, but, under the statute, the payee is denied the power and process of the court to enforce its contract. The statute, art. 746, is in the nature of a penalty, which will not be extended by construction beyond the plain meaning of the language used.

The plaintiff in the case held the note sued upon as collateral, and was an innocent purchaser thereof for value in due course of business and before maturity, which note was a negotiable instrument, payable to bearer. The plaintiff therefore took said note, fully protected in its right thereto, and free of any legal impediments, to its recovery. Hardie v. Wright, 83 Texas, 345; Texas Banking and Ins. Co. v. Turnley, 61 Texas, 365; 4 Am. & Eng. Enc. of Law, (2d ed.), 289.

*J. P. Hart, J. S. Barnwell,* and *F. S. Eberhart,* for appellee.— The court did not err in rendering judgment for appellee, because the note here sued on was void even in the hands of appellant, for the reason that it grew out of a transaction expressly prohibited by statute under a penalty. Rev. Stats., arts. 745, 746; Campbell v. Jones, 2 Texas Civ. App., 263; St. Louis M. F. Co. v. Beilharz, 88 S. W., 512; Turner v. National Cotton Oil Co., 50 Texas Civ. App., 469.

MR. JUSTICE BROWN delivered the opinion of the court.

The Honorable Court of Civil Appeals of the Sixth Supreme Judicial District submits the following statement and question:

"December 23, 1901, the appellee in the above entitled and numbered cause, now pending on appeal in the Court of Civil Appeals for the Sixth District, and others, citizens of Texas residing in Upshur County, at Big Sandy, in said Upshur County, entered into a contract with the Chicago Building and Manufacturing Company, a corporation under the laws of the State of Illinois, whereby said building and manufacturing company in consideration of $5,950 to be paid to it as the aggregate of subscriptions for the purpose made by appellee and others, undertook to construct and equip, and afterwards, in accordance with its undertaking, did construct and equip for appellee and said other parties, on land designated by them, situated in the town of Big Sandy, a 'cooperative canning factory.' As a renewal of a note made by him at a time not shown by the record, to cover his subscription to the fund to pay for the construction and equipment of the canning factory, appellee on February 29, 1904, executed and delivered to said building and manufacturing company his promissory note as follows:

" 'Big Sandy, Texas, Feb. 29, 1904. No. 1352.
" 'On November 1, 1904, after date I promise to pay to The Chicago Building & Manufacturing Co., or bearer, two hundred and twenty-eight 30/100 dollars, $228.30, at the Farmers & Merchants Bank of Gilmer, Texas. With interest at the rate of 10 percent per annum until paid. Value received, without any relief whatever from valuation, homestead or appraisement laws. The drawers and en-

dorsers severally waive presentment for payment, protest, notice of protest and nonpayment of this note.

"'In case of collection by suit reasonable attorney's fees shall be added.                            W. J. Holland.'

"'Due November 1, 1904.

"'P. A. Big Sandy, Texas.'

"Before its maturity, to wit, on March 9, 1904, the building and manufacturing company delivered the note set out above to appellant, the State Bank of Chicago, incorporated under the laws of Illinois, to hold as collateral security for an indebtedness then existing against it in favor of said bank. A portion of said indebtedness being past due and unpaid, at a time not shown by the record, said bank as the holder of the note commenced its action on the note set out, in the County Court of Upshur County, resulting in the judgment in appellee's favor from which the appeal now pending in said Court of Civil Appeals for the Sixth District was prosecuted. In his answer to said suit appellee, among other things, alleged as a defense, and on the trial proved, that said building and manufacturing company at the time it entered into said contract with appellee and said other parties, and at the time it constructed and equipped said canning factory in accordance with said contract, and at the time the note sued on was made and delivered to it, was a corporation under the laws of said State of Illinois and had not secured a permit as such a corporation or otherwise to transact business in this State. As avoiding the effect of such allegation and proof on appellee's part, appellant alleged and on the trial proved facts showing that, with reference to the note sued upon, it occupied the position and was entitled to assert the rights belonging to a bona fide holder thereof before its maturity for a valuable consideration paid, without notice of the vice in it alleged in appellee's answer as specified. In the face of such allegation and proof on its part, appellant, by a proper assignment of error presented on its appeal pending as aforesaid, insists that the judgment in favor of appellee is erroneous. We agree said judgment is erroneous if such a holder of such paper can maintain in the courts of this State a suit thereon, but are in doubt whether such a holder can so maintain such a suit or not. In view of the fact that the question is an important one, and, as is indicated by the record, that a number of other suits arising out of the same transaction and probably involving the question still may be pending in the County Court of Upshur County, and in view of the further fact that it arises in a case which will be finally disposed of by the judgment rendered by us, we deem it advisable, as authorized by Sayles' Statutes, art. 1043, to present to the Supreme Court for adjudication the following question arising on the case as stated:

"As a bona fide holder as found by us of the note set out above, was the State Bank of Chicago authorized to maintain a suit thereon in the County Court of Upshur County?

"To the statement made we add that it is clear to our minds, on the facts stated, and we so find, that the Chicago Building and Manufacturing Company could not have maintained a suit on the note

(Sayles' Stats., arts. 745, 746), and it seems to be settled, if appellant did not occupy the position of a bona fide holder, that it could not maintain such a suit. Texas & P. Ry. Co. v. Davis, 93 Texas, 378, 55 S. W., 562. In other jurisdictions as a bona fide holder it seems appellant could maintain the suit. Williams v. Cheney, 69 Mass. (3 Gray), 215; Roche v. Ladd, 83 Mass. (1 Allen), 436; Zink v. Dick (Ind.), 27 N. E., 622; Bank v. Pick (North Dakota), 99 N. W., 63; Bank v. Press Co., 56 Fed., 260. But see Ehrhardt v. Robertson, 78 Mo. App., 404; Bank v. Coughron, 52 S. W., 1112; Campbell v. Jones, 2 Texas Civ. App., 263, 21 S. W., 723."

We answer the question submitted in the affirmative.

Articles 745 and 746, Revised Statutes, read as follows:

"Art. 745. Hereafter any corporation for pecuniary profit, except as hereinafter provided, organized or created under the laws of any other State, or of any territory of the United States, or any municipality of such State or Territory, or of any foreign government, sovereignty or municipality, desiring to transact business in this State, or solicit business in this State, or establish a general or special office in this State, shall be and the same are hereby required to file with the Secretary of State a duly certified copy of its articles of incorporation, and thereupon the Secretary of State shall issue to such corporation a permit to transact business in this State. If such corporation is created for more than one purpose the permit may be limited to one or more purposes."

"Art. 746. No such corporation can maintain any suit or action, either legal or equitable, in any of the courts of this State upon any demand, whether arising out of contract or tort, unless at the time such contract was made or tort committed the corporation had filed its articles of incorporation under the provisions of this chapter in the office of the Secretary of State for the purpose of procuring its permit."

It will be observed that under these articles it is not expressly declared nor necessarily implied that any contract or right which might be entered into or acquired by a foreign corporation without compliance with the statute should be void. The statute expressly denounces the penalty against such failure to comply with the law as being barred from the courts of the State to assert any right that such corporation may have growing out of a transaction had without complying with the terms of the said statute.

The decisions of this State are somewhat in confusion and there is an apparent conflict upon issues similar to that involved in this case. In a number of cases it has been held that contracts made in consideration of gambling operations are absolutely void, but in no one of those cases were the rights of an innocent purchaser involved, and, being so distinguished from this case, we do not deem it necessary or profitable to review them.

In Thompson v Samuels, 14 S. W., 143, the question now before the court was presented and decided. In writing the opinion Mr. Justice Acker reviewed prior decisions of this court at length and arrived at the conclusion that while some of the opinions used the expression that contracts similar to that then under consideration

were void, yet the court did not mean to hold such contracts to be *void* in the sense that they were not enforceable as between the maker of the contract and an innocent holder for value. In Thompson v. Samuels the court quoted with approval from 1 Daniel on Negotiable Instruments, paragraph 197, as follows: "The bona fide holder for value, who has received the paper in the usual course of business, is unaffected by the fact that it originated in an illegal consideration, without any distinction between cases of illegality founded in moral crime or turpitude, which are termed 'mala in se,' and those found in positive statutory prohibition, which are termed 'mala prohibita.' The law extends this peculiar protection to negotiable instruments because it would seriously embarrass mercantile transactions to expose the trader to the consequences of having the bill or note passed to him impeached for some covert defect. There is, however, one exception to this rule,—that, when a statute expressly, or by necessary implication, declares the instrument absolutely void, it gathers no vitality by its circulation in respect to the parties executing it, though even upon such instruments an indorser may . . . be held liable." After a careful review of all the preceding cases in this court Mr. Justice Acker for the court said: "While gaming of various kinds is denounced by our penal code, we have no statute in this State declaring that all contracts entered into upon gaming considerations are void. We are of opinion that the court below erred in rendering judgment for the defendant; and, as there is no controversy as to the facts that appellant acquired the note before its maturity for a valuable consideration, and without notice of any vice in the consideration for which it· was executed, and that the notes remain unpaid except the sum of $4.50, credited thereon as interest, the judgment of the court below is reversed, and judgment is rendered here for appellant for the amount for which the note was given, and interest at ten percent per annum from the 1st day of September, 1887, less the credit thereon, and all costs." Thus the court held that the note was not invalid in the hands of the innocent purchaser for value. This case has not been reported in the official volumes of the Court Reports, but it is authority and appears to be the latest authority from this court upon the question.

"Illegality is not as a rule a defense to commercial paper in an action thereon by a *bona fide* holder thereof, to whom it was transferred for value before maturity without notice." 8 Cyc., 45 B.; Campbell v. Jones, 2 Texas Civ. App., 263; Bank v. Pick (N. Dak.), 99 N. W., 63; Bank v. Press Co., 56 Fed. R., 260; Williams v. Cheney, 3 Gray, 215; Alleghany Co. v. Allen, 69 N. J., 270.

If the instrument is void *ab initio,* the defense of illegality is available even against an innocent purchaser for value before maturity, and without notice. 8 Cyc., 46; Gilder v. Hearne, 79 Texas, 120.

Regarding the question as important, we have given it a careful and thorough examination, but we do not deem it prudent to enter into a discussion of the subject beyond that which is necessary to support the answer given.