COPE v. PITZER. (No. 7870.)

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 28, 1914. Rehearing Denied April 4, 1914.)

1. APPEAL AND ERROR (§ 731*)—ASSIGNMENT OF ERRORS—FORM—GENERALITY.

An assignment of error that one finding by the trial court was in conflict with two other findings, which does not point out in what respect the findings conflict, is too general to be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3017–3021; Dec. Dig. § 731.*]

2. CORPORATIONS (§ 90*)—ACTION ON SUBSCRIPTION—FINDINGS OF FACT—INCONSISTENT FINDINGS.

A finding that the agent of an insurance company in selling stock of the company did not misrepresent to the subscriber the past or existing status of the company, and that any misstatements made by him involved future contingencies, and were speculative and conjectural, is not inconsistent with findings that the agent represented that the note for his commission was all that the subscriber would have to pay for the stock, that the company would carry the note for the purchase price for the

stock as a loan which would eventually be paid out of the dividends, but that at the time of action the company had paid no dividends, and did not intend to for some time.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 245, 383–419; Dec. Dig. § 90.*]

3. CORPORATIONS (§ 99*)—STOCK SUBSCRIPTIONS — VALIDITY — CONSTITUTIONAL AND STATUTORY PROVISIONS.

Const. art. 12, § 6, provides that no corporation shall issue stock or bonds except for money paid, labor done, or property actually received, and all fictitious increase of stock or indebtedness shall be void. Rev. St. 1911, art. 4725, subd. "e," requires the articles of incorporation of a life insurance company to show the amount of its capital stock, all of which must be subscribed and fully paid up before the articles of incorporation are filed. Rev. St. 1911, art. 4733, provides that the laws relating to corporations in general shall govern life insurance companies in so far as they are pertinent and not in conflict with the statutes especially pertaining to such companies. Rev. St. 1911, art. 1146, provides that no corporation shall issue any stock except for money paid, labor done, or property actually received. *Held*, that these provisions did not prevent a life insurance company from contracting to sell an increase of its capital stock and take notes of the subscribers in payment for such stock where the stock was not issued by the company until the notes were fully paid, since the contracts did not constitute sales and actual issuance of the stock on credit within the meaning of the Constitution and statutes.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 444–446; Dec. Dig. § 99.*]

4. APPEAL AND ERROR (§ 934*) — REVIEW — PRESUMPTIONS.

Where the trial court found that a life insurance company was ready to issue stock, forming a part of an increase of the capital stock of the company, to a subscriber upon his paying the note given for the purchase price thereof, it must be presumed, in aid of the judgment against the subscriber, that the company had complied, or was ready to comply, with the statutory requirements for increasing its capital stock.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3777–3781, 3782; Dec. Dig. § 934.*]

5. CORPORATIONS (§ 76*)—SUBSCRIPTIONS FOR STOCK—VALIDITY.

A subscription contract for the purchase price of a portion of the capital stock of a corporation created by an increase in the amount of its authorized capital stock, where notes were given by the subscriber in payment for the stock, is, when not in violation of law, a valid and enforceable obligation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 197–209, 213–218; Dec. Dig. § 76.*]

6. CORPORATIONS (§ 80*)—SUBSCRIPTIONS FOR STOCK—VALIDITY—MISREPRESENTATIONS.

Statements by an agent in taking subscriptions for the increased capital stock of a life insurance company, the purchase price of which was represented by notes, that the agent's commission was all the subscriber would be compelled to pay, for the company would carry his subscription as a loan which would eventually be paid out of the dividends from the stock, are mere puffing inducements or promises for future performance, and not fraudulent misrepresentations, especially where it does not appear that the company had no intention to refuse a compliance with such promises.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 244, 246–264, 1407, 1407½; Dec. Dig. § 80.*]

Appeal from Taylor County Court; E. M. Overshiner, Judge.

Action by S. A. Pitzer against J. E. Cope. Judgment for the plaintiff, and defendant appeals. Affirmed.

Howell Johnson and W. A. Hadden, both of Ft. Stockton, and Cunningham & Oliver, of Abilene, for appellant. Ben L. Cox, of Abilene, for appellee.

DUNKLIN, J.  J. E. Cope, Felix S. Wilson, and Tom Cope each subscribed for 10 shares of capital stock of the face value of $1,000 in the Wichita Southern Life Insurance Company, agreeing to pay therefor the sum of $2,500, evidenced by two promissory notes, one for $2,000, payable to the company, and one for $500 payable to S. A. Pitzer, who solicited the subscriptions for and on behalf of the company under appointment by F. W. Griffin, its fiscal agent. The subscription contracts were in writing duly signed, and each an exact copy of the other. Three suits were instituted by Pitzer upon the notes executed to him, and from judgments in his favor the defendants have appealed, and the three appeals have been consolidated. The cases were tried by the court without the aid of a jury. No statements of facts appear in the records, the assignments of error being predicated upon findings of fact and conclusions of law filed by the trial judge. The facts so found by the trial judge in the case against J. E. Cope, together with the conclusions of law thereon, are as follows; the findings of fact in the other cases being identical with the exception that Tom Cope's and Felix S. Wilson's names appear as subscribers instead of J. E. Cope:

"I. On or about the 7th day of February, 1912, the Wichita Southern Life Insurance Company was a duly incorporated life insurance company under the laws of the state of Texas, doing business and having its principal office and place of business in Wichita Falls in Wichita county, Tex., and J. E. Cope, the defendant, was a resident citizen of Ft. Stockton in Pecos county, Tex.

"II. Prior to said date it was proposed by said corporation to increase its capital stock and surplus fund, as shown by the contract between said company and defendant, as hereinafter set out, and F. W. Griffin of Wichita Falls was engaged or employed by said company as its fiscal agent to dispose of said shares of capital stock represented by said increase, and said Griffin was duly authorized and empowered to solicit and obtain subscription contracts to said increase of said capital stock on blank forms for subscription approved by said company, one of which forms was used in taking said subscription of the defendant.

"III. Said F. W. Griffin employed plaintiff, S. A. Pitzer of Abilene, Tex., to assist him in taking subscriptions to the capital stock of

said company, and the said company secured the subscriptions of defendant to 10 shares of said capital stock, the defendant entering into the following contract, to wit: 'No. shares, 10. Subscription Contract to Increase Capital Stock of Wichita Southern Life Insurance Company, Wichita Falls, Texas. Whereas, Wichita Southern Life Insurance Company is a life insurance company, successfully organized and incorporated under the laws of the state of Texas, and, whereas, it is proposed to increase the capital stock of said company in accordance with the provisions of the laws of the state of Texas, to an amount not exceeding, with that already subscribed, a total paid-up capital stock of $300,-000.00 and a paid-up surplus of $300,000.00; and, whereas, said company has engaged F. W. Griffin as fiscal agent, to sell said increase in capital stock: Now, therefore, I, J. E. Cope of Ft. Stockton, Texas, hereby subscribe for ten shares of the said capital stock when so increased, of the par value of $100.00 each, said stock to be fully paid up and nonassessable, and I agree to pay therefor $250.00 per share as follows: $50.00 per share to be paid to said F. W. Griffin in cash on date of subscription, to be appropriated by him for selling and distributing the stock hereby subscribed for; and $200.00 per share to be paid at Wichita Falls, Texas, to the said company on January 1st, 1913, as evidenced by my promissory note of even date herewith, of which $100.00 goes to the capital stock fund and $100.00 to the surplus fund of the company; said company alone has the right to accept or reject this subscription contract. If accepted, amount of $50.00 specified above as paid in cash to said F. W. Griffin on date hereof shall be considered duly earned and not to be refunded to me under any condition. If rejected, total payments made to date hereof, shall be refunded to me. No conditions or agreements other than those printed hereon shall be binding on any party hereto. It is expressly agreed that any payment becoming due on the stock subscribed for or on any note given therefor, must be paid within ten days after date due, and in the event of failure to so make such payment, then this subscription contract and any such note or notes shall thereupon become void, and all payments made thereon shall thereby at once be and become forfeited to said company, and it is hereby agreed that the amount so forfeited is and shall be the stipulated, liquidated damages, which said company will suffer by reason of such failure, however, the subscriber shall have the right to make arrangements satisfactory to said company for the extension of such note, without prejudice to the rights of said company or fiscal manager under this clause. Dated and signed at Ft. Stockton, Texas, this 19 day of Feb. 1912. J. E. Cope, Subscriber. Ranchman, Occupation. Witness: S. A. Pitzer, Agent.'

166 S.W.—29

"IV. The defendant paid no cash in said contract, but executed and delivered to the said Pitzer, the defendant's certain promissory note for $500.00, payable to the order of the said S. A. Pitzer at Abilene, Tex., six months after date, and being dated February 7, 1912, bearing 10 per cent. interest from date and providing for the 10 per cent. additional as attorney's fees under the usual conditions, the same being the note sued on in this clause. That the defendant at the time also executed his note for $2,000 to cover the amount of $100 a share to go to the capital stock fund, and $100 a share to go to the surplus fund of the company as provided in said contract; said note being payable to F. W. Griffin at Wichita Falls, Tex., and being due January 1, 1913, bearing interest at the rate of —— per cent. from date, and being dated February 7, 1912. At the time of the delivery of said contract and notes to the said Pitzer by defendant, the said Pitzer delivered to the defendant a receipt, which is as follows, viz.: 'No. Feby. 19, 1912. Received of J. E. Cope of Fort Stockton, Texas, the sum of five hundred dollars, as part payment for 10 shares of the capital stock of Wichita Southern Life Insurance Company of Wichita Falls, Texas, as set forth in said subscription contract numbered as this receipt and bearing even date herewith. Should said subscription contract be not accepted by said company, the amount paid as per this receipt will be refunded. It is expressly agreed that any payment becoming due under the said subscription contract, or on any note given for the stock thereby subscribed for must be paid within ten days after date due, and in the event of failure to so make any such payment, then the said subscription contract and the said note or notes shall thereupon become void and all payments thereon shall thereby at once be and become forfeited to said company and it is hereby expressly agreed that the amount so forfeited is and shall be the stipulated liquidated damages which said company will suffer by reason of such failure. Not valid unless countersigned by S. A. Pitzer, Salesman. F. W. Griffin, Fiscal Manager. ——, Secretary.' This receipt is countersigned by 'S. A. Pitzer, Salesman,' across its face. The cash payment of $500 mentioned in said receipt was represented by the note for $500 sued on in this cause. That the proceeds of the note were to be divided between the said Griffin and plaintiff, and plaintiff having paid to said Griffin said Griffin's portion of same, Pitzer became the owner and holder of said note.

"V. The said company delivered no stock to the defendant on the execution of said contract and notes, and no stock has been delivered to defendant thereon, and said company has not agreed to deliver any stock thereon until said note for $2,000 is paid in full, and demands payment of said note as a prerequisite to issuing said 10 shares of

stock, or any part thereof, to defendant, but said company stands ready to deliver to the defendant said 10 shares of stock on payment of said note for $2,000.00.

"VI. Said note for $2,000 and said contract executed by defendant were accepted by said company, and are now held by F. W. Griffin, fiscal agent for said company, in his office in Wichita Falls. No part of said note for $2,000 has been paid, and on the 2d day of December, 1912, said company, acting by and through its assistant manager, or fiscal manager, F. W. Griffin, and over his signature wrote the defendant a letter, in substance, as follows, viz.: 'Your note dated February 7, 1912, for $2,000.00 with $144.00 accrued interest, making a total of $2,144.00 will be due January 1, 1913, and we would like very much to receive your check for this amount on that date. If it is your purpose to make some other arrangements in regard to the payment of this note, kindly take it up with us at once in order that we may have time to consider the matter before the note is due.' During the correspondence between the company and the defendant about the payment of this note, which correspondence was conducted principally, if not entirely by the fiscal agent Griffin, the company offered to extend the time of payment of same on payment of all interest accrued, and to accrue to the date of maturity of the renewal note and expressed a willingness to make other extensions in future, provided all interest on same was paid to maturity, and satisfactory arrangements could be made with the company at the time of the renewals. No renewal of said note for $2,000 has ever been executed by defendant. The company does at times accept renewal notes and extend the time of payment of notes given as subscriptions to its capital stock.

"VII. Said Pitzer, in order to induce defendant to sign said contract and notes, represented to the defendant at the time of their execution that said note for $500, given by defendant to said Pitzer, was all that the defendant would have to pay on said notes; that said life insurance company was in a prosperous condition; that it had a large amount of money on hand which it was loaning out, and in making loans it always gave its stockholders the preference, and in case defendant could not pay said note for $2,000 at maturity the company would carry it as a loan; that the company then had on hand a surplus out of which it would soon declare a dividend to its stockholders, and if defendant would subscribe then he would participate in this dividend; that the profits and income of the company were such that the dividends earned by the stock which defendant subscribed for would be sufficient to pay the interest on said $2,000 note, and would in time pay the principal thereof. The defendant was a stockman, and had little knowledge of the organization and manage-

ment of corporations, and knew nothing at all about the affairs of the Wichita Southern Life Insurance Company except what Pitzer told him, and never participated in any stockholders' meeting of the company in any way. That he relied upon and believed the statements of Pitzer, and would not have purchased said shares of stock had not such representations been made by said Pitzer. Said Pitzer was a comparative stranger to defendant at the time of said subscription, they having known each other only about two weeks.

"VIIa. I further find that at the time said representations were made said life insurance company was in a prosperous condition, and had money to loan and was loaning large sums of money to stockholders and others. The portion of its surplus represented by selling its capital stock above par was held by said company, and was not distributed in dividends, but only the portion of the surplus or undivided profits, derived from its sales of insurance interest on loans and other sources was distributed in dividends to the stockholders. At the time said representations were made said company had sufficient surplus, or undivided profits subject to such distribution, to pay a small dividend to its stockholders, but no dividend was declared, and company has never paid a dividend on its capital stock, and does not contemplate doing so until the end of the year 1913. Said company never contracts directly to carry stock subscription notes and apply the dividends on the stock they represent to the payment of, or as credits on said notes.

"VIII. I find that the defendant executed the note described in plaintiff's petition, and delivered the same to S. A. Pitzer on the date of said note, that said note was in writing, and by its terms payable at Abilene, Taylor county, Tex., and that said note was past due and unpaid to the extent of the judgment rendered herein.

"IX. I find that the $50 per share cash payment recited in said subscription contract referred to the $500 note which was given by the subscriber to Pitzer, which $500 note Pitzer accepted from the subscriber in lieu of cash as a private agreement between the said Pitzer and said subscriber, and I find that Pitzer then became the owner of said $500 note, and that he paid said F. W. Griffin $100 out of said note, and one Charley Graham, who acted with him in securing said subscription, $125 out of same.

"X. I find that defendant subscriber fully understood at the time he executed said $500 note that said note represented so much cash, the duly earned compensation of said F. W. Griffin as provided in said contract, and understood that same was not to be refunded to him under any condition, save and except the rejection of his subscription contract by the company.

"XI. I find that said Pitzer did not mis-

represent to the subscriber the present or past or existing status or condition of said company in order to induce the execution of said note and contract; that if he made any misstatements which induced the execution and delivery of the notes and contract, same involved future contingencies, and were speculative and conjectural.

"From which facts I find the following conclusions of law, to wit:

"I. The Wichita Southern Life Insurance Company could lawfully contract for the sale of its capital stock through an agent, and agree to deliver the same to the subscriber on a future date, when fully paid for in cash upon delivery thereof, at least the par value thereof, and that the contract entered into by defendant subscriber for such purchase of stock was a valid and binding obligation.

"II. The defendant subscriber, having signed the $500 note with due knowledge of the law and with a full understanding of what it was for, is now estopped from claiming that it is without consideration, or constitutes a part of an ultra vires contract.

"III. The promises and inducements held out by the said Pitzer to defendant subscriber to get him to sign said contract and notes, in effect, attempted to vary the terms of said written contract, and were not binding either on said company, or on Griffin or on Pitzer; that they were mere puffing inducements and promises for future performance, and were not as a matter of law fraudulent.

"IV. Plaintiff is entitled to judgment against defendant for the amount due on said note according to its terms.

"V. I conclude that defendant's plea in abatement is not well taken."

The representations made by Pitzer to the subscribers in order to induce them to enter into the contracts and execute the notes, as shown in paragraph VII of the court's findings of fact, were alleged in appellants' answers, coupled with allegations that the same were untrue, and appellants each sought to avoid liability by reason of such misrepresentations.

[1, 2] By the first assignment of error the contention is made that the findings shown in the eleventh paragraph of the facts found, in effect, that Pitzer did not misrepresent to the subscribers the present or past condition of the company; that if he made any misrepresentations which induced the execution and delivery of the notes and contracts, same involved future contingencies only—is contrary to the facts found in paragraphs VII and VIIa. In what respects the supposed conflicts consist is not pointed out in the assignment, which for that reason is too general to merit consideration. Aside from that suggestion, however, we fail to discover any inconsistencies in those findings.

[3] The principal defenses urged to the recoveries sought are that the subscription contracts were in violation of article 12, section 6, of our state Constitution, and Revised Statutes, 1911, art. 4725, subdivision "e," 4727, 4733, 1146, and 1147.

Article 12, § 6 of the Constitution reads: "No corporation shall issue stock or bonds except for money paid, labor done or property actually received, and all fictitious increase of stock or indebtedness shall be void."

Article 4725 of the statutes prescribes what shall be shown in articles of incorporation of a life, health, or accident insurance company, and subdivision "e" of that article reads as follows: "The amount of its capital stock, not less than $100,000.00 all of which capital stock must be subscribed and fully paid up and in the hands of the corporators before said articles of incorporation are filed, such capital stock to be divided into shares of one hundred dollars each."

Article 4727 provides for the amendment of charters of insurance companies.

Article 4733 provides that the laws relating to and governing corporations in general shall govern life insurance companies also in so far as the same are pertinent and not in conflict with the statutes pertaining specially to life, health, or accident insurance companies.

Articles 1145, 1146, and 1147 pertain to corporations in general. By article 1145, it is provided that, in order for a corporation already formed to increase its capital stock, the same showing shall be made relative to the amount of stock subscribed and the amount of payments on such subscriptions as is required to obtain the original charter.

Article 1146 reads: "No corporation, domestic or foreign, doing business in this state, shall issue any stock whatever, except for money paid, labor done, which is reasonably worth at least the sum at which it was taken by the corporation, or property actually received, reasonably worth at least the sum at which it was taken by the company. Any corporation which violates the provisions of this article shall, on proof thereof in any court of competent jurisdiction, forfeit its charter, permit or license, as the case may be, and all rights and franchises which it holds under, from or by virtue of the laws of this state."

By article 1147 it is made the duty of the Attorney General of the state to institute judicial proceedings for the cancellation of any stocks or bonds issued by a corporation in violation of the provisions of article 1146.

The decision in McCarthy v. Texas Loan & Guaranty Co., 142 S. W. 96, by the Court of Civil Appeals for the Eighth District, and in which case a writ of error was denied by our Supreme Court, is the authority relied upon most strongly by appellants to support their contention that their contracts with the insurance company were in contravention of the article of the Constitution and of the statutes above noted, and therefore void.

It will be noted that the inhibition prescribed by the Constitution and statutes is against the issuance of stock without the payment therefor in money, labor, or property, and that by article 4725, subdivision "e" of the statutes, it is provided that, before the issuance of the charter for a life insurance company, the stock must be fully paid up and in the hands of corporators, and by other articles of the statutes the same requirements necessary for the formation of a corporation apply also to an amendment of its charter after it has been first organized. The case of McCarthy v. Texas Loan & Guaranty Co., supra, was a suit by a subscriber for stock against a corporation to enforce the issuance to him of the stock for which he had subscribed, or in the alternative, for damages for breach of the contract to issue such stock. According to the terms of that contract, the subscriber was not obligated to pay all cash for his stock when it should be issued, but was entitled to receive the same upon payment of less than 10 per cent. of the contract price in cash and the execution of his notes for the balance. In that case it was held that the contract was violative of the provisions of the Constitution above noted. Likewise in Mason v. First Natl. Bank of Paint Rock, 156 S. W. 366, also cited by appellants, it was held that a promissory note given for the entire consideration of capital stock already issued to the maker of the note was in violation of the Constitution, and no recovery could be had thereon. Also in S. A. Irri. Co. v. Deutschmann, 102 Tex. 201, 105 S. W. 486, 114 S. W. 1174, our Supreme Court used the following language: "The contract which Deutschmann sets up, by which he was *not to pay for the stock any money at the time* of its issue (italics ours) is plainly and unquestionably in violation of the Constitution of the state, and, being in violation of the Constitution, that agreement, in so far as it provided that Deutschmann should have all the time that he might find necessary in which to pay for his stock, was void." Other authorities are cited by appellants in line with the decisions noted.

[4] The facts in the case at bar differ from those in the cases noted, in that, as shown by the subscription contracts themselves, the insurance company did not agree to deliver any stock until the purchase price therefor was fully paid, and the purchase price was more than double the face value of the stock. And as recited in the fifth paragraph of the court's findings, none of the stock has been delivered to appellants, but the company stands ready to deliver the same upon the payment of the notes executed by the subscribers in favor of the company. If the company is ready to do this, then in aid of the judgment, it must be presumed that, if it has not already done so, it is now ready to comply with the statutory requirements necessary to properly amend its charter; nothing to a contrary effect appearing in the findings.

As the act prohibited by the Constitution and the statutes is the issuance of stock by a life insurance company without full payment of the consideration therefor, and as no stock has been issued to appellants, and as the company has not obligated itself to issue, and does not intend to issue. the same except upon payment by the subscribers of more than the face value of the stock, the authorities relied on by appellants are not applicable in this case.

[5] It is well settled that a subscription contract such as those in controversy, when not in violation of law, is a valid and binding obligation which can be enforced in court. Belton Compress Co. v. Saunders, 70 Tex. 699, 6 S. W. 134; 10 Cyc. 394.

[6] While the Insurance Company obligated itself to issue stock to the subscribers in the future upon the payment of the consideration therefor, those contracts did not constitute sales and actual issuance of stock on credit within the meaning of the Constitution and statutes, as appellants insist by different assignments of error. We are of the opinion, further, that the trial judge was correct in his finding that any misstatements by Pitzer which induced appellants to execute the contracts and notes were mere puffing inducements and promises for future performance involving speculative and conjectural future contingencies which were not binding upon the company for that reason, and for the further reason that they were at variance with the written contracts, especially in view of the further fact that there is no finding by the trial judge that at the time of the execution of the contracts and notes, the insurance company had no intention to refuse a compliance with such promises. 10 Cyc. 391; 2 Thompson on Corporations, § 1311.

Appellants insist that the court erred in his second conclusion of law in holding that appellants are estopped from claiming that the notes were a part of an ultra vires contract. We agree with appellants in the contention that they would not be estopped to claim that the executions of the notes in controversy were procured by fraudulent misrepresentations of fact, but we construe the conclusion as meaning simply that, as appellants had failed to establish their pleas of fraudulent misrepresentations inducing them to execute the notes, the insurance company was entitled to recover, and that the conclusion that appellants were estopped from questioning the validity of the contracts was used in that sense only.

The judgments are affirmed.