REPUBLIC TRUST CO. v. TAYLOR.*
(No. 7536.)

(Court of Civil Appeals of Texas. Dallas. Jan. 15, 1916. On Rehearing, April 8, 1916.)

1. RECEIVERS ☞1 — APPOINTMENT — ANCILLARY REMEDY.

The appointment of receivers is an ancillary remedy in aid of the principal object of a litigation between the parties, and such relief must be germane to the principal suit, and a suit cannot be maintained where the appointment of a receiver is the sole primary object thereof, and no cause of action or ground for equitable relief is otherwise stated.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 1; Dec. Dig. ☞1.]

2. CORPORATIONS ☞99(1)—SUBSCRIPTION TO STOCK — VALIDITY — CONSTITUTIONAL AND STATUTORY PROVISIONS.

Under Const. art. 12, § 6, declaring that no corporation shall issue stock except for money paid, labor done, or property actually received, and Vernon's Sayles' Ann. Civ. St. 1914, art. 1146, providing that any corporation violating such inhibition shall, upon proof thereof, forfeit its charter and all rights under the laws of the state, a subscription to the capital stock of a corporation on credit, accompanied by the simultaneous issuance and delivery of the stock,

was altogether void, and the buyer was not liable upon his notes given in payment.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 444; Dec. Dig. ☞99(1).]

3. BILLS AND NOTES ☞375 — RIGHTS OF HOLDER—ILLEGAL CONSIDERATION.

Where the consideration of a note given by a purchaser of the capital stock of a corporation was illegal under the constitutional and statutory provisions as to the sale of capital stock on credit, the note was void and its payment could not be enforced, even in the hands of an innocent purchaser.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 971–981; Dec. Dig. ☞ 375.]

On Rehearing.

4. CONTRACTS ☞103—VIOLATION OF STATUTE —PUBLIC POLICY.

When an act is prohibited by the fundamental law or by statute as a means for the protection of the public from fraud in contracts or to promote such object of public policy, all contracts in violation thereof are void.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 468–476; Dec. Dig. ☞103.]

5. BILLS AND NOTES ☞375—PAYMENT FOR CORPORATE STOCK—VALIDITY OF CONSTITUTIONAL AND STATUTORY PROVISIONS.

Const. art. 12, § 6, declares that no corporation shall issue stock except for money paid, labor done, or property actually received, and Vernon's Sayles' Ann. Civ. St. 1914, art. 1146, provides that any corporation violating such provision shall forfeit its charter and all rights, etc., under the laws of the state. Held, that the provisions were intended to protect the public from fraudulent contracts and to promote public policy, so that notes given for capital stock sold and delivered on credit were void and unenforceable, even in the hands of a bona fide holder for value.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 971–981; Dec. Dig. ☞ 375.]

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Action by the Republic Trust Company against H. O. Taylor, with answer asking for appointment of a receiver. Receiver appointed, and plaintiff appeals. Reversed and remanded.

S. P. English and F. W. Wozencraft, both of Dallas, for appellant. H. P. Edwards and Cockrell, Gray & McBride, all of Dallas, for appellee.

RASBURY, J. This appeal is prosecuted from an interlocutory order of the trial judge appointing a receiver for the affairs of appellant. The substance of the facts necessary to a disposition of the appeal are practically undisputed, and are as follows:

Appellant, Republic Trust Company, as we gather from the pleadings, is a private corporation incorporated under the laws of the state of Arizona, with a permit from the state of Texas to transact its business therein, although we do not find such facts otherwise established. On July 25, 1912, appellee, H. O. Taylor, as the result of negotiations with J. C. Everett, the agent of appellant, signed the following contract:

"This is to certify that I hereby purchase 333⅓ shares of the capital stock of the Republic Trust Company, for which I agree to pay five thousand and no/100 dollars.

"I further agree that no statement, representation, or agreement or warranty made to me by the person taking this subscription shall in any way operate to cancel or annul this contract, unless the same be reduced to writing and filled in on the following line. This contract is subject to Ass't Director contract. Also a privilege of renewal for 6 to 12 months longer is allowed on notes.

"I hereby constitute and appoint C. L. Wakefield, of Dallas, Texas, my true and lawful attorney to represent me and vote my proxy, and I hereby ratify and confirm the acts of my said attorney until hereafter annulled by me in writing. This proxy is revocable at my pleasure. It is agreed and understood that 25 per cent. of the sale price of the stock of said company is to be expended for organization and promotion expenses.

"Dated this 25th day of July, A. D. 1912."

Simultaneously with the execution of the foregoing contract appellee also executed and delivered the following note and collateral agreement:

"On December 30, 1912, without grace, after date, for value received, I, we, or either of us, promise to pay to the order of A. Silver & Co. thirty-seven hundred and fifty and no/100 dollars, at the office of said company in Dallas, Texas, with interest at the rate of 6 per cent. per annum from date until paid, and in the event default is made in the payment of this note at maturity and it is placed in the hands of an attorney for collection or suit is brought on same, then an additional amount of 10 per cent. on the principal and interest of this note shall be added to the same as collection fees. The drawers and indorsers severally waive presentment for payment, protest, and nonpayment on this note. H. O. Taylor."

"As collateral security for the foregoing note, and other notes, if any, this day given for the stock hereinafter named, I have delivered to the Republic Trust Company the following securities: 333⅓ shares of the Republic Trust Company. In case of default in the payment of any of the foregoing and above-described notes at maturity, I, we, or either of us authorize the holder of said note to sell said securities, with or without notice, at public or private sale, at the option of the holder, applying the proceeds to the payment of the above note, including interest and attorney's fees, and the surplus, if any, remaining thereafter to be paid to the maker hereof on demand. H. O. Taylor."

Simultaneously also with the foregoing appellee executed and delivered to appellant's said agent another note for $1,250, payable to the same parties, and maturing evenly with the first note. Both notes while payable to A. Silvers & Co., were taken for the benefit and use of appellant, and represented the sale price of the 333⅓ shares of stock described in the foregoing transactions. Everett, acting as agent for appellant, negotiated the $1,250 note with a bank at Edna, Tex. The bank acquired the note before maturity for value. So the matter stood until October 15, 1915, at which time appellant commenced the instant suit on the $3,750 note and collateral agreement, alleging that appellant acquired the note before maturity for value. Judgment was sought for the amount of the note, interest, attorney's fees, a foreclosure

of the lien upon the collateral security, and sale thereof under order of the court. Appellee by his answer admitted the execution of the note sued on, but denied liability on the ground that it was void because unlawfully given in payment of stock in appellant corporation sold and issued to him on credit and because obtained by fraud. By appropriate plea in reconvention appellee also sought affirmative relief against the $1,250 note, alleging it also to be subject to same defenses urged against the $3,750 note. Subsequently by amended answer he alleged the appellant to be insolvent or in imminent danger thereof, and sought the appointment of a receiver pendente lite. We have said that receiver was appointed. In addition to the facts recited the court also found as a fact that appellant's agent induced appellee to sign said two notes by certain false promises and representations; also that appellant was insolvent or in imminent danger thereof. Such findings are challenged as being without support in the evidence. The disposition of the appeal from our view of the issues does not depend upon the facts so found, and for that reason it is not necessary to determine whether the findings are or are not sustained by the evidence, and as a consequence we express no opinion in that respect.

The controlling issue on appeal, presented in various forms, is the right of the district judge to appoint a receiver. We will discuss the issue without reference to the manner in which it is presented in the briefs.

[1] It is first contended, stating the proposition in our own language, that the right of a court to appoint a receiver of a corporation is not a cause of action per se, but only a remedy ancillary to a cause of action, "a preliminary protective measure, by which property is impounded and held by the court until the cause of action" is judicially determined. The general rule is stated thus:

"It is well settled as a general rule that the appointment of receivers is an ancillary remedy in aid of the primary object of a litigation between the parties, and such relief must be germane to the principal suit; and a suit cannot be maintained under this general rule where the appointment of a receiver is the sole primary object of the suit, and no cause of action or ground for equitable relief otherwise is stated." 34 Cyc. 30.

The rule as stated has been affirmed in a number of cases by our appellate courts. Espuella Land & Cattle Co. v. Bindle, 5 Tex. Civ. App. 21, 23 S. W. 819; New Birmingham I. & L. Co. v. Blevens, 12 Tex. Civ. App. 410, 34 S. W. 828; People's Inv. Co. v. Crawford, 45 S. W. 738; Farwell v. Babcock, 27 Tex. Civ. App. 162, 65 S. W. 509; Hermann v. Thomas, 143 S. W. 195.

[2] The rule stated is of moment in the instant case under the further proposition by appellant, stated again in our own language, that appellee is not liable upon either of the notes sued on, for the reason that the same were executed and delivered in payment for the capital stock of the appellant in violation of article 12, § 6, of the Constitution which declares that "no corporation shall issue stock or bonds except for money paid, labor done or property actually received," and in violation of article 1146, R. S. 1911, which is interpretive of the constitutional provision. In connection with the proposition thus asserted appellee pleaded that both notes were given in payment of the stock of appellant, and that he was not liable thereon for the constitutional and statutory reasons stated unless the purchase by said bank of the $1,250 note before maturity for value would make him liable to that extent. The first inquiry then is: Does it appear from the record that both notes in controversy were given in payment of the capital stock of appellant? We conclude it does. The only facts on that issue before us, and they are undisputed, is the contract to purchase the notes and the agreement pledging the stock as collateral security for payment of the notes. These are simple matters, and, standing alone, establish, in our opinion, a completed sale on credit of the capital stock of the company. While the sale of the stock could have been completed without entering into the contract which we have copied in this opinion, it appears therefrom that it was intended to serve purposes other than the mere acknowledgment of appellee that he had purchased stock. It provides against canceling or annulling the purchase because of statements, representations, or agreements made by or with the selling agent aliunde the contract. It also serves the purpose of appointing C. L. Wakefield appellee's attorney in fact to represent him and vote his stock at stockholders' meetings. Incidentally it may be said that, if the stock had not actually been issued and sold, it could not have been voted. As security for the notes so given in payment of the capital stock the parties to the transaction recite that appellee has delivered to appellant the identical stock so purchased. There could not have been a delivery of the stock back to appellant without an issuance of the same. Further, it is agreed that, if appellee fails to pay the notes, the stock shall be sold, and the proceeds applied to the payment of the notes; any surplus remaining to be paid to appellee. Such proceedings could not be had in the absence of ownership. Accordingly, in view of the provisions of the contract, notes, etc., and the deductions to be made therefrom, and in the absence of any other facts disclosing a different intention than that to be deduced from such several matters, no other conclusion can be reached than that the stock was issued and delivered to appellee, constructively perhaps, but delivered nevertheless, and in turn redelivered to appellee as collateral security for the notes given in payment therefor. Being a sale and delivery and consequent issuance of the

capital stock of appellant on credit, the entire transaction was void, because in violation of the constitutional and statutory inhibitions quoted. It has been so held. San Antonio Irrigation Co. v. Deutschmann, 102 Tex. 201, 105 S. W. 486, 114 S. W. 1174; McCarthy v. Tex. Loan & Guaranty Co., 142 S. W. 96; Farmers' & Merchants' State Bank v. Falvey, 175 S. W. 833; Sturdevant v. Falvey, 176 S. W. 908. The reasons for holding such contracts void have been stated so often we deem it unnecessary to reiterate same here. The reasons are, however, well settled in McCarthy v. Tex. Loan & Guaranty Co., supra.

We do not understand that counsel for appellee denies the correctness of the rule stated in the cited cases, but that he does contend that the holdings in the cases we have cited were based on facts unlike those shown in the instant case, and cites as cases presenting facts similar to those in the instant case Cope v. Pitzer, 166 S. W. 447, and the two Falvey Cases, supra. An examination of the cases relied on by counsel will disclose a wide dissimilarity in the facts in those cases with the facts in the instant case. In Cope v. Pitzer, supra, it appears that the company delivered no stock actually or constructively, made no attempt to pledge, nor provided for voting the stock, and demanded payment of the notes of the subscriber before issuing the stock. In the first Falvey Case, where the contract was quite similar to the one in the instant case, the court based its holding that the sale was not on credit upon facts aliunde the contracts, notes, etc., and say in that respect, "if we had no evidence before us other than the note and the certificate of stock, we might be constrained to hold that it did," constitute a 'sale on credit. The second Falvey Case was perhaps erroneously cited, since it sustains the general rule stated in this opinion. It appearing, then, that there was a sale of the capital stock of appellant on credit, accompanied by simultaneous issuance and delivery of same it follows that the entire transaction was void, and that appellee was liable upon neither note, and being liable upon neither could not use his supposed liability as maker of the $1,250 note as basis for his application for the appointment of a receiver.

[3] It is, however, urged that appellee was liable upon the $1,250 note, for the reason that the bank acquired same before maturity for value. The manner of acquiring the note does not change the rule, since, the consideration of the note being illegal, it is void, and its payment cannot be enforced even in the hands of an innocent purchaser for value. Seeligson v. Lewis, 65 Tex. 216, 57 Am. Rep. 593; Wegner v. Biering, 65 Tex. 510; Davis v. Sittig, 65 Tex. 498; Carriage Co. v. Hatch, 19 Tex. Civ. App. 120, 47 S. W. 288; Mason v. Bank, 156 S. W. 366.

For the reasons stated, the judgment of the court below is reversed, and the cause remanded for further proceedings not inconsistent with the views expressed herein.

Reversed and remanded.

## On Rehearing.

It is earnestly and ably argued by counsel for appellee that we erred, among other things, in ruling that appellee was not liable on the $1,250 note of which the bank at Edna was alleged to be a bona fide holder for value. The conclusion reached upon consideration of the case was that the sale of stock on a credit was void, and, being void, the fact that the contract evidencing the illegal act was a promissory note in the hands of a bona fide holder for value could impart no legality to the void transaction. In our opinion, we stated the rule only, and did not attempt to discuss the fundamental and underlying principles from which the rule was evolved. We will now briefly do so. The constitutional provision, popularly known as the stock and bond law, declares that "no corporation shall issue stock or bonds except for money paid, labor done or property actually received." Article 12, § 6, Const. In furtherance of the constitutional provision, the Legislature enacted that any corporation, foreign or domestic, that violated the constitutional inhibition should, upon proof thereof in a court of competent jurisdiction, forfeit its charter, permit, or license as the case may be, as well as all rights and franchises conferred or permitted by the laws of the state. Article 1146, Vernon's Sayles' Stats. Thus the issuance of corporate stock save as directed is declared illegal, and hence void, and the offending corporation is denied further right to transact business in the state, and all rights and franchises acquired under its permit forfeited. Such laws are not uncommon, and well-settled rules of construction have followed their enactment.

[4] One of the rules is that, when an act has been prohibited by the fundamental law or by statute, it is material to ascertain what the Legislature had in view when the law was enacted, whether the collection of revenue or the protection of the public from fraud in contracts or the promotion of some object of public policy. If for the latter two purposes, all contracts in violation of the statute, whatever character they may assume, are void. And in seeking the meaning of the lawgiver it is also material to inquire whether the penalty is imposed once for all on infraction of the statute, or whether it is a recurring penalty repeated as often as the statute is violated. If a recurring penalty, the intention of the lawgiver was to prohibit the doing of the thing denounced, and its accomplishment in any manner is void. Benj. Sales (Bennett 1899), § 538.

[5] The foregoing is nearly literally the text which we have cited, and presents quite clearly the correct rule for determining the issues in the instant case. The first inquiry

then is: Was the purpose of the law to raise revenue or to protect the public from fraudulent contracts or the promotion of some object of public policy? Clearly the purpose was not revenue, since no revenue results from the imposition of forfeiture. That the other two objects were the purpose sought we think quite as clear. The public policy sought to be promoted was the protection of the citizens of the state against the issue and sale of stock in private corporations, save for money paid, labor done, or property actually received, and the purpose thereby attained, as said in McCarthy v. Texas Loan Co., 142 S. W. 96, was to protect creditors and prevent irresponsible persons from creating corporations of unlimited capital stock without assets of substantial value, and to insure to corporate investors the right which they have to assume that the corporation's actual capital, in money or money's worth, is equal to the capital stock which it purports to have. It being then the purpose of the law to protect the citizens of the state against the results of unlimited issue of stock in corporations and consequent financial loss, the doing of the prohibited act, however accomplished, is void. Broadly speaking, any contract founded upon an act which is forbidden by the Constitution or statutes of the lawmaking power, or which cannot be enforced because in violation of the Constitution or statute, is void, and cannot be enforced. It was said in Deutschmann's Case, cited in our original opinion, that:

Such a contract was "plainly and unquestionably in violation of the Constitution of the state, and, being in violation of the Constitution, that agreement * * * was void," and "cannot give a right of action for damages or for any other relief in the courts of this state."

In consonance with the declaration of our Supreme Court just quoted it is said:

"The general rule is that any act which is forbidden either by the common or statutory law, whether it is malum in se or merely malum prohibitum, whether indictable or only subject to a penalty or forfeiture or however otherwise prohibited by statute or the common law, cannot be the foundation of a valid contract. A fortiori the agreement is illegal and unenforceable if it contravenes the Constitution. Accordingly a promissory note the consideration whereof is bills of credit, issued in contravention of a constitutional prohibition, is void." 3 R. C. L. 951.

By the same authority (and by all authority we have examined) it is declared:

"The protection which the law extends to an innocent holder who for value in the usual course of trade has received negotiable paper is of no avail when the statute in terms, or by unavoidable implication, has pronounced the instrument absolutely void." 3 R. C. L. 1017; 1 Dan. Neg. Ins. § 197; Thompson v. Samuels (Sup.) 14 S. W. 143; Gilder v. Hearne, 79 Tex. 120, 14 S. W. 1031; State Bank of Chicago v. Holland, 103 Tex. 266, 126 S. W. 564.

While our Constitution and the statutes do not enact in express terms that a negotiable promissory note given in payment of stock or in evidence of the void transaction shall be void, yet that the acts do so by unavoidable and necessary implication seems beyond intelligent controversy. Can it be logically argued that, when the fundamental law declares a given act shall be void, by concealing it in legal form it takes on legality? We think not. If the sale of the stock was evidenced by a contract reciting the true consideration, none would deny that the same would be void ab initio. Then by mere change of the evidence of the unlawful transaction it surely cannot be made other than what it was from its inception. Such a construction would at one stroke hold as vain and useless the clear intention and purpose of the Legislature, and declare as absurd an act intended as the climax of a much-discussed question of public policy, particularly when it is considered that under established commercial usages the sale of corporate stock would rarely, if ever, be evidenced save by negotiable promissory notes.

Appellee relies upon the case of State Bank of Chicago v. Holland, supra, as sustaining his claim that the note is not void. The effect of the holding in that case is to declare that the statutory provisions which bar foreign corporations from the courts of our state until they have a permit to transact business in the state does not render void an otherwise good consideration of a promissory note, and by analogy that another corporation, which is entitled to sue in our courts, which acquires such note, may maintain suit thereon. The decision in that case is determined, when carefully considered, by the rules announced by Mr. Benjamin, since the act there construed, while in some respects regulatory, is clearly a revenue or tax measure, as distinguished from acts to prevent fraud in contracts or in furtherance of the public policy of the state.

While the case presents some difficulties, we conclude our original conclusion should stand as our judgment in the case.

Accordingly the motion for a rehearing is overruled.