FARMERS' & MERCHANTS' STATE BANK
v. FALVEY et al.   (No. 6779.)

(Court of Civil Appeals of Texas.   Galveston.
March 17, 1915.   Rehearing Denied
April 8, 1915.)

1. EVIDENCE ⊜⇒80—PRESUMPTION—LAW OF
OTHER STATE.
    In the absence of proof of the laws of another state, it will be presumed they are the same as those of Texas, and so prohibit issuance of stock, except for money paid, labor done, or property actually received.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 101; Dec. Dig. ⊜⇒80.]

2. CORPORATIONS ⊜⇒99 — FOREIGN CORPORATIONS—ISSUING STOCK.
    Rev. St. 1911, art. 1146, prohibiting any corporation, domestic or foreign, doing business in the state, from issuing stock, except for money paid, labor done, or property actually received, applies to a foreign corporation actually doing business in Texas, though having no permit to do so.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 444–446; Dec. Dig. ⊜⇒99.]

3. BILLS AND NOTES ⊜⇒369—CORPORATIONS
⊜⇒99—STOCK—ISSUE OF OR SUBSCRIPTION
FOR—NOTES.
    There is not an issue of stock, which, being for the purchaser's note, in contravention of Rev. St. 1911, art. 1146, renders the note void, even in the hands of an innocent purchaser, but nothing more than a subscription for the stock, it being agreed the maker of the note was not to get the stock unless he paid the note, and the payment of it, by secret agreement, being made optional, so that the note in the hands of a purchaser, without knowledge of the secret agreement, is enforceable against the maker; and all this though the collateral clause of the note and the certificate of stock attached to the note by the corporation as security recite that the stock is that of the maker of the note.
    [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 951; Dec. Dig. ⊜⇒369; Corporations, Cent.Dig. §§ 444–446; Dec.Dig. ⊜⇒99.]

4. BILLS AND NOTES ⊜⇒226—INDORSEMENT—
CONSIDERATION.
    It is sufficient consideration for a stranger's indorsement of a note, without which the purchaser would not take it, that from the proceeds of the sale he was to be and was paid what the payee of the note owed him.
    [Ed. Note.—For other cases, see Bills and Notes, Cent.Dig. §§ 534–541; Dec. Dig. ⊜⇒226.]

5. BILLS AND NOTES ⊜⇒238—INDORSEMENT—
WARRANTY OF GENUINENESS.
    The indorsement of a note by a stranger for a consideration, on the sale thereof, carries with it his warranty of its genuineness, making him liable to the purchaser, even if the note is void as to the maker.
    [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 565, 566; Dec. Dig. ⊜⇒ 238.]

Appeal from District Court, Nacogdoches County; L. D. Guinn, Judge.

Action by the Farmers' & Merchants' State Bank against Thomas S. Falvey and others. From the judgment, so far as in favor of defendants Falvey and Cavin, plaintiff appeals. Reversed and rendered.

Ingraham & Hodges, of Nacogdoches, for appellant. John W. Lewis, of Houston, and King & Seale, of Nacogdoches, for appellees.

McMEANS, J.   The Farmers' & Merchants' State Bank brought this suit against Thomas S. Falvey, as maker, and the Tri-State Construction Company and George W. Cavin, as indorsers, of a promissory note, which will be copied further on in this opinion, and for interest due thereon, and for attorney's fees stipulated for therein, and for $4.50 protest fees.

Plaintiff alleged that on April 10, 1912, defendant Falvey for a valuable consideration made, executed, and delivered to the defendant Tri-State Construction Company, a corporation duly incorporated under the laws of West Virginia, his promissory note for $2,500, due one year after date, bearing 8 per cent. per annum interest from date, and providing for the payment of 10 per cent. attorney's fees in case suit should be brought thereon after maturity; that the defendant Tri-State Construction Company indorsed the note by writing its name across the back of same, thereby making it negotiable; and that thereafter, before the maturity of said note and for a "valuable consideration, and by a special contract made and entered into, the defendant Geo. W. Cavin indorsed said note by writing his name across the back of same, and verbally and in writing personally bound himself and promised to pay said note according to its reading and effect, with all interest and attorney's fees as therein expressed." Plaintiff further alleged that it purchased said note before its maturity, and after it had been indorsed as above stated, for a valuable consideration, without notice of any infirmity in the note or defense thereto by its maker and the indorsers, the failure of the maker and indorsers to pay the same at maturity, the presentment of same for payment and protest, and the payment by it of the protest fees, and the necessary facts to entitle it to a recovery of attorney's fees.

It does not appear that the defendant Tri-State Construction Company filed an answer. The defendant Falvey answered by general denial, and specially pleaded that on April 10, 1913, he entered into a contract with the defendant Tri-State Construction Company, a corporation doing business in Texas, with its office in the city of Houston, by which said corporation sold to him 125 shares of its capital stock for the sum of $2,500, the stock being of the par value of $20 per share, and in consideration therefor he executed and delivered to said corporation the note sued on, which is set out in hæc verba in the answer. He further pleaded that, at the time he purchased said stock, it was agreed by and between himself and the corporation that said 125 shares of stock was to be issued by the corporation and attached to said note as collateral security for the payment thereof, and that thereafter said stock was so issued and attached to the note; that said note was executed for the stock, and that

no other thing of value was paid therefor, all of which plaintiff knew when it purchased said note, wherefore said transaction was, under the Constitution and laws of Texas, unenforceable and the note void. He further alleged that his codefendant Cavin was familiar with all the facts and circumstances of the transaction, and knew, at the time he indorsed the note, that the note was executed in payment for the stock, and that nothing had been paid therefor.

Defendant Cavin denied all the allegations of plaintiff's petition which sought to hold him liable, other than the fact that he indorsed the note, and denied that, at the time he indorsed the note, he knew of any fact that rendered it invalid. He specially pleaded that he had no interest in or connection with the note further than he was trying to collect from the defendant Tri-State Construction Company a debt that said company owed him, and was informed by said company that it owned the note herein sued on, and that, if same could be negotiated or sold, it would pay him $1,250 on its indebtedness to him out of the proceeds; that said construction company had placed said note with a bank at Alvin, Tex.; that said construction company instructed the Alvin bank to forward said note to plaintiff bank, and that the latter was instructed to pay to him $1,250 from the proceeds of the note, remitting the balance to the Alvin bank; that in pursuance of such instruction the plaintiff bank did pay to him $1,250, and remitted the balance to the bank at Alvin. He further alleged that the plaintiff knew, at the time it purchased the note, that it was invalid, because it carried notice upon its face that the same had been executed by defendant Falvey in payment of stock, and that plaintiff had full notice of the illegality of the consideration for the execution of said note. He further alleged that his indorsement of the note was without consideration. He prayed that in the event the note should be held to be a valid obligation, and that judgment should be rendered thereon in favor of plaintiff, he have judgment over against defendant Falvey.

Plaintiff, by a supplemental petition in reply to the allegations of defendant Falvey's answer, denied that the note in question was given in payment for the stock, and alleged, in effect, that defendant Falvey had subscribed for the stock, and that his subscription was evidenced by the note sued upon, and that the stock had never been delivered to him but was attached to the note as collateral security. It denied any knowledge of the invalidity of the note, or that the note on its face disclosed that it was unenforceable. It alleged in the alternative that the Tri-State Construction Company was chartered under the laws of West Virginia; that it never secured a permit to do business in Texas; and that, under the Constitution and laws of West Virginia, it had the right to accept notes in payment for its stock, and that for this reason, if the transaction hereinbefore detailed should be held to be a sale of stock for a note, the note herein sued on is a valid and binding obligation upon the maker and indorser.

By its supplemental petition in reply to the answer of the defendant Cavin, the plaintiff pleaded that said defendant was interested in the sale of the note, in that he was to receive $1,250 out of the proceeds of sale in payment of a debt owing to him by the construction company, which was then insolvent, and, to induce plaintiff to purchase the note, represented to plaintiff that the note was good, and that he would promptly pay it at maturity, and that he verbally contracted and promised to pay said note to plaintiff at maturity, and, independently of his written indorsement, guaranteed plaintiff against any loss in any event, upon which guaranty, as well as his written indorsement, plaintiff relied and was induced thereby to purchase the note, and that the defendant Cavin received a part of the proceeds of the purchase.

The pleadings are quite voluminous, and many allegations contained in them are omitted; but we have stated the substance of such allegations as we think present the issues that will control in the disposition of the case under the law applicable to the material facts proved.

The case was tried before a jury; but, when the introduction of the testimony was concluded, the court peremptorily instructed the jury to return a verdict in favor of the defendants Falvey and Cavin, and in favor of plaintiff against the Tri-State Construction Company, for the amount of the note, interest, attorney's fees, and protest fees, and, this having been done, a judgment was accordingly entered. From the judgment against it in favor of Falvey and Cavin, the plaintiff has appealed.

Appellant by its first and second assignments of error assails the action of the trial court in instructing a verdict in favor of the defendants Falvey and Cavin. Under these assignments, it presents several propositions which we shall not discuss in detail, but shall now, as briefly as we may, detail the undisputed material facts proved on the trial upon which we think the court should not only have not given the charge complained of, but should have instructed a verdict for the plaintiff.

The Tri-State Construction Company was incorporated under the laws of the state of West Virginia, with a capital stock of $450,000, of which only $980 had been paid in. On April 10, 1912, it was, and it is now, and since then has been, wholly insolvent. It never acquired a permit to do business in Texas. Prior to said time it had acquired the right of way upon which to construct an interurban railway in Texas, and had

purchased cross-ties from appellee Cavin on credit, and owed him therefor a sum of money in excess of $1,250. On the date stated, it contracted with appellee Falvey for the sale to him of $5,000 of its capital stock; the agreement of Falvey to buy it partaking of the nature of a subscription for that much stock, and in legal effect was a subscription. At the time Falvey contracted for the stock, he executed and delivered to the construction company his note for $5,000, and it was agreed that the construction company should hold the stock and attach it to the note as collateral security. When Falvey executed and delivered this note to the construction company, he wrote upon it the words "not transferrable"; his purpose being to render it nonnegotiable. The construction company, adopting the view that the note was non-negotiable, requested Falvey to execute two negotiable notes in lieu thereof, each for $2,500, bearing 8 per cent. per annum interest, and containing the usual stipulation for the payment of 10 per. cent. as attorney's fees, and Falvey complied with this request. The note in suit was one of these and is as follows:

"Fostoria, Texas, 4/10/1912.

"On April 10, 1913, without grace, after date, for value received, I, we, or either of us, promise to pay to the order of the Tri-State Construction Company twenty-five hundred dollars at the office of said company in Houston, Texas, with interest at the rate of eight per cent. per annum from date until paid, and in the event default is made in the payment of this note at maturity and it is placed in the hands of an attorney for collection, or suit is brought on same, then an additional amount of ten per cent. on principal and interest of this note shall be added to the same for collection fees. The drawers and indorsers severally waive presentment for payment, protest and nonpayment of this note.

"Thomas S. Falvey.

"As collateral security for the foregoing note and other notes, if any, this day given for the stock hereinafter named, I have delivered to the Tri-State Construction Company the following securities: 125 shares Tri-State Construction Co.

"In case of default in payment of any of the foregoing and above-described note at maturity, I, we, or either of us, authorize the holder applying the proceeds to the payment of the above note, including interest and attorney's fees, and the surplus, if any remaining thereafter, to be paid to the maker hereof on demand.        Thomas S. Falvey."

While Falvey testified upon direct examination that he bought the stock with his note, his testimony upon the whole shows that this was only a conclusion, and his testimony upon cross-examination shows that the note was not given by him or accepted by the construction company as a payment for the stock, but at most only evidenced his suscription therefor. He testified:

"I don't know, as a matter of fact, that I intended to pay this note, if this concern turned out all right. * * * It was like this: I gave these notes with the understanding they would keep them 12 months, and then, if I didn't want the stock, they would give me the notes back and 20 per cent., but if I wanted the stock I could get the stock; that is the way the proposition was. It wasn't the understanding that I gave the two $2,500 notes with the understanding that the company retain the notes 12 months, and then return me the notes or my money back and 20 per cent. It wasn't that at all. I was to get 20 per cent. in money or get the stock. That was the understanding and the intention I had in my mind when I gave the notes. * * * It was the understanding merely that I was to get 20 per cent. on the investment. It wasn't that I was to get 20 per cent. of $5,000 or $5,000 worth of stock. I was to get 20 per cent. or that much stock. * * * I didn't have a written contract with them to that effect, but that is the understanding and was the understanding they had with everybody. * * * If I wanted to pay the $5,000, of course I got the stock; and if I didn't want to pay it, and didn't want the stock, I didn't pay it, and they were to allow me and give me 20 per cent. on the $5,000. If I would pay I would get the stock, plus the 20 per cent. If I didn't take the stock, I would get 20 per, cent. on $5,000."

It seems that, prior to the transaction above detailed, Falvey had bought and paid for $1,000 worth of the stock of the construction company. On April 10, 1912, the date he contracted for the $5,000 worth of stock, he wrote a letter to J. A. Host, in which he said:

"I have just subscribed for six thousand dollars of the Tri-State Construction Company stock believing it to be one of the best propositions offered to the public to-day," etc.

In reference to this letter he testified:

"I have used the word 'subscribed' in this letter all right, but you will remember I have just testified that I bought $1,000 worth of this stock and paid the money for it. * * * I don't know that I used the word 'subscribed' for the purpose of inducing the public into buying the stock or subscribing for it. It is not my understanding that I merely subscribed for all of this stock, for I know I bought $1,000 worth of it for I have already paid for it."

He further testified:

"I guess if I had paid this note for $2,500 when it was due that I would have gotten the $2,500 worth of this stock. * * * I am sure I would have, then. That is what I bought with this note, and that is what I executed this note for; and if I had paid the note when it matured I would have gotten this stock, but it was my understanding that I bought the stock, and the stock was attached to the note as collateral. As to whether or not I thought I would get the stock before I paid the note, will say I never expected to pay the note when it was executed. I never intended to pay for this stock at all. * * * I never intended to pay the $5,000 note, and then I changed the $5,000 note to two $2,500 notes, but when I executed both of them I never meant or intended to pay either one of them."

Several days after Falvey had executed the two $2,500 notes in lieu of the one for $5,000, the construction company made out and signed two stock certificates, each for $2,500 worth of stock, each containing a recital that Falvey was the owner of the amount of stock named in the certificate, and one of these certificates was attached to the note in suit and placed by the construction company in the bank at Alvin. Afterwards Cavin began to press the construction company for payment of the debt due him by that company, and was told by

the construction company that, if he would negotiate the sale of the note in suit, it would pay him on his account $1,250 out of the proceeds, whereupon Cavin called upon the officials of the plaintiff bank and asked them to purchase the note, representing that it was good and would be paid at maturity, and requested the bank to investigate Falvey's pecuniary responsibility; and in due course the bank officials reported to him that they had made the investigation, and that the report upon Falvey's financial standing was favorable. Cavin then again requested the bank to buy the note, but the latter, for reasons not necessary to be given, at first demurred, but afterwards agreed to buy it on the condition that Cavin would guarantee its payment by his indorsement. A short time thereafter the plaintiff bank received the note, with the stock attached, through the mail from the Alvin bank, with a letter from the latter directing plaintiff to pay to Cavin $1,250 out of the purchase money and to remit the balance to it. Just who directed the Alvin bank to send the note to plaintiff the evidence does not disclose, but it was not sent at the plaintiff's instance. After plaintiff received the note, it notified Cavin of this fact, and Cavin, after some hesitation, indorsed his name thereon, but not until he was assured by the plaintiff that it would not buy the note unless and until he indorsed it. Plaintiff then paid Cavin $1,250, as instructed by the Alvin bank, and sent the balance to the latter.

[1, 2] Appellant insists that if it should be held that the facts proved on the trial establish that the stock in question was issued for the note, and that the same was not paid for in money, property, or labor, and that the sale of the stock and the note given therefor would be void as to a corporation organized and chartered under the laws of Texas, or as to one chartered under the laws of another state, and which had secured a permit to do business in Texas, still the issuance of the stock and the payment therefor by the execution of the note to the purchaser were not, under the facts of this case, invalid, for the reason that under the Constitution and laws of West Virginia, in which state the construction company was incorporated, it was not prohibited from issuing its stock for a promissory note, and that the laws of that state should determine the legality of the transaction at issue. This contention may be overruled upon two grounds: (1) While appellant alleged that the transaction was not inhibited by the Constitution and laws of West Virginia, it signally failed to make the proof. True, it introduced in evidence certain articles of the Constitution of that state relating to corporations, none of which contained language similar to the language of section 6 of article 12 of the Constitution of

this state, or article 1146, Revised Statutes, which provide that no corporation shall issue stock or bonds, except for money paid, labor done, or property actually received; but it was not shown that the articles introduced were all that were contained in the Constitution having reference to corporations. Assuming, however, that 'there were no articles relating to corporations, except those put in evidence, and that therefore there was no constitutional inhibition against the issuance and sale of stock upon credit, there was no proof that there was no legislative enactment of that state which contained such an inhibition. True, appellant undertook to prove there was not, and to that end introduced, over the objection of appellees, a decision of the Supreme Court of West Virginia, which, if it had any probative force, did not establish the fact sought to be proved. See Railroad v. Applegate & Son, 21 W. Va. 172. In the absence of proof of the laws of West Virginia, it will be presumed that they are the same as the laws of Texas, and, indulging this presumption, it will be presumed that the laws of that state prohibit the issuance of stock, except for money paid, labor done, or property actually received. (2) Article 1146, Revised Statutes 1911, which was in force at the time of the transaction under discussion, provides that no corporation, domestic or foreign, doing business in this state, shall issue any stock whatever, except for money paid, labor done, or property actually received. Treating the construction company as a foreign corporation, within the meaning of the article, and it having been shown that the corporation was doing business in this state, the statute applied to it with full force, and prohibited the issuance of stock by it for the promissory note of the purchaser. Fowler v. Bell, 90 Tex. 150, 37 S. W. 1058, 39 L. R. A. 254, 59 Am. St. Rep. 788; Loan Ass'n v. Griffin, 90 Tex. 487, 39 S. W. 656.

[3] But do the facts of this case show that the construction company issued its stock to Falvey upon his promise in writing to pay the same, or, in other words, for his promissory note? If we had no evidence before us other than the note and the certificate of stock, we might be constrained to hold that it did, for the collateral clause of the note recites that:

"As collateral security for the foregoing note * * * this day given for the stock hereinafter named, I have delivered to the Tri-State Construction Company the following securities: 125 shares Tri-State Construction Co."

And the stock itself certifies that Falvey is the owner of 125 shares of such stock, fully paid up, and nonassessable. But the evidence clearly shows, we think, that the collateral clause of the note and the stock certificate do not recite the true facts, and that the facts therein recited would not be true and were not intended to reflect the facts,

until the transaction was fully completed by Falvey paying the contract price ffor the stock. What the facts really were is shown by Falvey's testimony. His contract to give his note for the par value of the stock, and that the construction company would hold both the note and the stock for one year, and that he·could have gotten the stock only by paying the amount of his note, is clearly inconsistent with the claim that he became the owner of the stock when he executed his note. Again he says, and his testimony is undisputed, that he had the option to decline the payment of the note at maturity, and that in that event the construction company would surrender the note to him and pay him 20 per cent. of the par value of the stock. Clearly, we think, this refutes the contention of an executed sale. We think that · the facts, broadly viewed, establish nothing more than that Falvey subscribed for the stock. A subscription ffor stock, however it may be evidenced, is nothing more than an agreement in writing to take and pay for the stock subscribed for, and it has been too often held to require citation of authorities that a subscription for stock may be enforced against the subscriber either by the corporation itself or by a creditor. It is true that Falvey did not sign any express agreement to take the stock and pay for it, but his testimony clearly shows that he did subscribe for stock, and the note evidenced his agreement to pay for it. It may be that, had this suit been brought by the corporation against Falvey to enforce the payment of the note given under the circumstances detailed by him in his testimony, he could have defended, in the absence of intervening rights of creditors, on the ground that his contract to take the stock was optional, and that he had exercised the option to refuse to take it, and to have his note canceled and surrendered to him. However, this question is not before us, and we make no decision upon it. But it is clearly the law that the agreement made by Falvey with the corporation, whereby he might escape the payment of the note, in the circumstances detailed by him, could not be urged as a defense to the suit of the appellant bank, which purchased the note for value, without notice of the secret agreement between Falvey and the corporation. Of course, if the transaction between Falvey and the corporation relating to the sale of the stock had been such as is inhibited by the Constitution and statutes of this state, the note would have been void even in the hands of an innocent purchaser for value. Mason v. Bank, 156 S. W. 366, and authorities cited. But, as we have undertaken to show, the real transaction was not one prohibited by law, and, as between the plaintiff bank and Falvey, was enforceable. We think, therefore, that the court erred in instructing a verdict for the defendant Falvey and in not instructing a verdict in favor of the bank against him.

[4] But what of Cavin's liability? The note in question was payable to the order of the Tri-State Construction Company, was negotiable, and was put in circulation by the construction company, by indorsing its name thereon. Cavin was interested in the sale of the note, for by its sale he could collect $1,250 of a debt owing him by the construction company, which was then insolvent. It was he who induced the plaintiff bank to purchase the note by representing that it was good, and by agreeing to indorse it, and thereby become liable for its payment, and by afterwards indorsing it, when he knew that without his indorsement the plaintiff would not purchase it. The collecting of the $1,250 out of the proceeds was a sufficient consideration for taking upon himself this liability. If we are correct in holding that Falvey, as the maker, was liable because the transaction in which the note was executed was not one prohibited by law, we think it necessarily follows that Cavin rendered himself liable by indorsing it for a sufficient consideration. It follows from this that the bank was entitled to a judgment against him also, and that the court should have so instructed the jury.

[5] But had the transaction ·between the corporation and Falvey been one that was prohibited by law, and had the note been therefore void as to Falvey, the maker, we still think that, under the circumstances of this case, Cavin was liable to the plaintiff by reason of his indorsement, for his indorsement for a consideration carried with it his warranty of its genuineness. Gardner . v. Hawes, 149 S. W. 273; McFarling v. Carey, 149 S. W. 766; Tiedeman on Commercial Paper, § 259; De Leon v. Trevino, 49 Tex. 88, 30 Am. Rep. 101.

Under the facts of this case, the plaintiff was entitled to a judgment against both Falvey and Cavin, and Cavin was entitled to a judgment over against Falvey, and the judgment of the court below will therefore be reversed, and judgment here rendered accordingly.

Reversed and rendered.