KANAMAN v. GAHAGAN.   (No. 7452.) *

(Court of Civil Appeals of Texas. Dallas. Feb. 5, 1916. Rehearing Denied April 22, 1916.)

1. BILLS AND NOTES ⬤―188 — MAKER AS PAYEE—INDORSEMENT IN BLANK—EFFECT.

A note payable to maker's order, when indorsed in blank, becomes, in legal effect, a note payable to bearer.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 447–452; Dec. Dig. ⬤―188.]

2. BILLS AND NOTES ⬤―210—NOTE PAYABLE TO BEARER—POSSESSION.

When a note is payable to bearer, possession passes property and is sufficient authority for maintaining suit.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 424, 425, 499; Dec. Dig. ⬤―210.]

3. BILLS AND NOTES ⬤―489(2) — ACTION — PLEADING—EVIDENCE.

In suit on a note payable to the maker's order and indorsed in blank, the allegations that defendant executed the instrument and put it into circulation, and that, in time, plaintiff became its owner, were sufficient to admit the note in evidence on the issue of ownership.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1588, 1589; Dec. Dig. ⬤―489(2); Pleading, Cent. Dig. § 1325.]

4. BILLS AND NOTES ⬤―462(1)—PLEADING—SUFFICIENCY.

In such suit, where the petition did not aver to whom the defendant delivered or agreed to deliver the stock attached to the note as security, but did allege that the stock was owned and held by plaintiff, who produced it on trial, the petition was sufficient.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 1444; Dec. Dig. ⬤―462(1).]

5. BILLS AND NOTES ⬤―508—BEARER—PAPER —ADMISSIBILITY.

Such note was admissible in evidence, though the evidence failed to show to whom it was to have been delivered or to whom it was to have been payable.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1728–1732; Dec. Dig. ⬤―508.]

---

**6. BILLS AND NOTES** ☜509—ACTION—EVIDENCE.

Evidence of defendant that he never intended to put such note into circulation at all was admissible against plaintiff, who took the note after maturity.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1740–1745; Dec. Dig. ☜ 509.]

**7. BILLS AND NOTES** ☜537(2)—INTENTION OF MAKER—QUESTION OF FACT.

Whether defendant ever intended to put the instrument into circulation at all was an issue of fact for the trial court.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1863–1865; Dec. Dig. ☜ 537(2).]

**8. APPEAL AND ERROR** ☜1010(1)—REVIEW—FINDING OF TRIAL COURT.

The Court of Civil Appeals cannot disturb a finding of the trial court as to an issue of fact supported by sufficient evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3979–3981; Dec. Dig. ☜ 1010(1).]

**9. CORPORATIONS** ☜99(1)—SALE OF STOCK ON CREDIT—STATUTE.

Under Const. art. 12, § 6, providing that no corporation shall issue stock or bonds, except for money paid, labor done, or property actually received, where, after defendant subscribed for stock in a traction company, which was not to be issued until payment, he was induced by the agent of the promoters to execute a note for the price, to which the stock issued in defendant's name was attached as collateral security, the parties agreeing that defendant had deposited and pledged his stock as security for the price he had agreed to pay for it, providing a method by which title could be divested out of him in case he defaulted by foreclosure of lien and sale of the stock, also providing that, in the event the stock sold for more than the debt, the surplus should be paid defendant, the transaction was a prohibited sale of corporate stock on credit.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 444; Dec. Dig. ☜99(1).]

Appeal from District Court, Dallas County; Jas. P. Haven, Judge.

Suit by H. I. Gahagan against W. I. Kanaman. From a judgment for plaintiff, defendant appeals. Judgment reversed, and rendered for defendant.

Adams & Stennis, of Dallas, for appellant. John W. Pope and M. L. Morris, both of Dallas, for appellee.

RASBURY, J. The appellee sued appellant upon his promissory note and collateral agreement dated August 30, 1913, by the combined provisions of which appellant agreed to pay to himself, 90 days after date, $850, together with 8 per cent. per annum interest from date until paid, and as security for which promise he pledged ten shares of the capital stock of the Southern Traction Company of Dallas, Tex. By his answer the appellant under oath denied the execution and delivery of the note and agreement, and affirmatively averred that he was induced to sign and deliver possession of same by the fraud and deceit of appellee. At trial jury was waived and the whole case submitted to Hon. James P. Hav-

en, who exchanged districts with Hon. E. B. Muse, by direction of proper authority. Judgment was for appellee for the principal of the note, interest, attorney's fee and for foreclosure of lien upon the corporate stock pledged as security for the debt. From the judgment so rendered, this appeal is prosecuted.

The essential facts deducible from the testimony are free from material conflict, and are substantially as follows: Prior to November 20, 1911, certain gentlemen were associated together under the name of the Southern Traction Company in an effort to construct a system of interurban railroads in a southerly direction from Dallas; the ultimate purpose being to incorporate. These promoters for such purpose solicited subscriptions from the public, selecting as their fiscal agent to whom subscriptions should be payable one John Auchincloss. On November 20, 1911, appellant subscribed in writing to ten shares of the capital stock of the proposed corporation, for which he agreed to pay $85 per share at periods agreed upon, but not necessary to enumerate. By the agreement no stock was to be issued to appellant until he had paid his subscription in full. Subsequent to the execution of the subscription contract just detailed, and on May 11, 1912, the Southern Traction Company, which had in the meantime incorporated, issued to Auchincloss, fiscal agent, certificate of stock for the ten shares subscribed by appellant, to be delivered by him to appellant when he had complied with his contract. Appellant failed to make any of the payments provided for in his contract. The matter so standing, appellee, acting for the promoters, or those who had succeeded them in the collection and adjustment of such subscriptions, and who are denominated by the witnesses as syndicate managers, underwriters, and reunderwriters, and whose functions, it seems, were to guarantee the payment of all subscriptions, reached the conclusion that the matter would be in better shape if he could secure appellant's note in lieu of his subscription contract. Appellee called upon appellant for that purpose. Appellant agreed to the proposed arrangement; whereupon the note and agreement sued upon were prepared by appellee and signed by appellant. It is as follows:

"Dallas, Texas, Aug. 30, 1913.
"90 days after date, without grace, I promise to pay myself eight hundred and fifty dollars for value received, negotiable and payable without defalcation or discount at the office of the Guaranty State Bank & Trust Co., Dallas, Texas, with interest at the rate of 8 per cent. per annum from date until paid.
　　　　　　　　　　　　　"W. I. Kanaman."

"I (we) have deposited or pledged with the holder of this note as collateral security for payment of this note shares C/S (preferred) Southern Traction Co. of Dallas, Texas.
"Now, in the event of nonpayment of this note at maturity, the holders hereof are hereby invested with full authority to use, transfer, hy-

pothecate, sell or convey the said property or any part thereof, or to cause the same to be done at public or private sale, with or without notice or demand of any sort, at such place and on such terms as the said holders hereof may deem best, and the holders of this note are authorized to purchase said collaterals when sold for their own protection, and the proceeds of such sale, transfer, or hypothecation shall be applied to the payment of this note, together with all protests, damages, interests, costs, and charges due upon the note or incurred by reason of its nonpayment when due, or in the execution of this power, also a commission of 2½ per cent. on the gross amount of collateral sold. Surplus if any, after payment of this note, together with all charges above stated, shall be paid to the drawer of this note, or, at the election of the holder hereof, be paid on any other obligation of the drawer hereof, whether as principal, debtor, or otherwise held by the holders hereof; and, if the proceeds of the above sale shall not be sufficient to pay this note, the drawer hereof agrees to make good on demand any deficit, and it is understood and agreed, should there be any depreciation in the value of said security prior to the maturity of this note, such an amount of additional security shall be furnished as will be satisfactory to said holder of this note, and, should such additional security not be furnished within twenty-four hours after demand so to do, then in that event said holder of this note may proceed at once to sell, as above specified, the security herein named. In the event default is made in the payment of this note at maturity, and it is placed in the hands of an attorney for collection, or suit is brought on the same, then an additional amount of 10 per cent. on the principal and interest of this note shall be added to same as collection fees.

"W. I. Kanaman."

The note and agreement were executed in appellant's office under the direction of appellee, who had with him at the time the certificate of stock issued to Auchincloss, which he attached to appellant's note under the terms of the collateral agreement; Auchincloss having in the meantime transferred the certificate in blank. Appellee then, as he had advised appellant he intended to do, pledged with a bank appellant's note and stock with other securities, in effecting a loan. Shortly before the note matured the promoters, or those representing them, transferred appellant's note, among others, to appellee. Appellee was in the employ of the promoters, and the purpose and consideration of the transfer was that appellee might, in his name, for them, handle such notes as his judgment dictated. When the note matured, appellant failed to pay same. Suit was commenced with the result stated.

[1-3] The first and second assignments raise an issue as to the sufficiency of the pleading. There is no allegation in the petition that the note sued upon was delivered to any one after its execution; merely the allegation that it was "delivered." Appellant urged a general demurrer to the sufficiency of the pleading and a special exception pointing out such insufficiency, both of which were overruled by the court, and it is the action of the court in the respect stated which is challenged. We conclude there was no error in the action of the court. As

appears from an examination of the note, it is payable to "myself" or the payee. In Johnson v. Mitchell, 50 Tex. 212, 32 Am. Rep. 602, our Supreme Court quotes approvingly the rule that "a note payable to the maker's order becomes, in legal effect, when indorsed in blank, a note payable to bearer." When so payable, possession passes property and is sufficient authority for maintaining suit. See, also, Grant v. Ennis, 5 Tex. Civ. App. 44, 23 S. W. 998; Garrett v. Findlater, 21 Tex. Civ. App. 637, 53 S. W. 840. The note being in legal effect payable to bearer, the allegation that appellant executed it and put it in circulation and that in time appellee became the owner of same was sufficient to admit the same in evidence on the issue of ownership.

[4] The third assignment complains of the action of the court in overruling appellant's special exception, which pointed out that the petition was insufficient because it did not aver to whom appellant delivered or agreed to deliver the certificate of stock attached to said note as security therefor. The security was a part of an incident to the note and appellee's right to a foreclosure and sale thereof was dependent upon ownership and possession. He did allege that the stock was owned and held by him and produced it upon trial, which was sufficient under the authorities cited.

[5-8] The fourth assignment of error complains of the admission of the note in evidence on the ground, in effect, that the evidence failed to show to whom the note was to be delivered or to whom it was to be payable. As shown by the cases cited, it was not necessary to allege or prove delivery of such a note nor to whom payment was intended. The law supplies both under the rule that possession is delivery and that by the execution of such a note it is "intended" to be, and is, payable to bearer or the one in possession. We do not, of course, intend to say that such rule excludes any other defense to the note. It was proper for appellant to testify as he did that he never intended to put it into circulation at all, and such evidence was admissible against appellee, since he acquired it after maturity, but such issue was one of fact to be determined by the court, which he did in favor of the appellee, and since, in our opinion, the evidence is sufficient to support the finding, we are without authority to disturb such finding under well-settled rules in that respect.

[9] The fifth assignment asserts that the evidence was insufficient to support the judgment on the ground that it shows that the note sued on was given in payment of stock in a corporation sold, issued, and delivered on a credit, and hence issued in violation of article 12, § 6, of the Constitution, which declares that "no corporation shall issue stock or bonds except for money paid, labor done, or property actually received."

It has been decided a number of times that a sale of the stock of a corporation on a credit is not a sale in consideration of money paid, labor done, or property actually received, and is hence illegal and void, because prohibited by the Constitution. Stated in another way, a contract which is in contravention of the Constitution cannot form the basis for any character of relief in the courts of the state. San Antonio Irrigation Co. v. Deutschmann, 102 Tex. 201, 105 S. W. 486, 114 S. W. 1174; McCarthy v. Tex. Loan & Guaranty Co., 142 S. W. 96; Farmers' & Merchants' State Bank v. Falvey, 175 S. W. 833. The inquiry then is: Did the several transactions detailed result in the issue of stock of a corporation in violation of the constitutional inhibition cited? Under the undisputed facts it can be said that the transactions resulted in nothing else. It is true that the original subscription contract was a lawful one and could have been enforced, for the very good reason that by that contract it was never contemplated that the stock in Southern Traction Company should be issued until the agreed price was paid. It expressly so provides. Nor did the delivery to Auchincloss, fiscal agent, by the traction company, after it was incorporated, of the amount of stock to which appellant subscribed, constitute a violation of the constitutional provision, since his possession of the stock was the possession of the company, and since it was held by him under the terms of appellant's subscription contract and to be delivered in accordance therewith. By the subsequent transaction, however, the relations of the parties underwent a radical, though simple, change, by which they merged the original subscription contract into a completed sale of the stock of the traction company on a credit. By the provisions of the note and agreement executed in lieu of the subscription contract the parties treat the transaction from no standpoint other than that of one conferring ownership of the stock upon appellant. They agree thereby that appellant has deposited and pledged his stock as security for the price he has agreed to pay for it. They provide a method by which title may be divested out of appellant in case default is made in the payment of the note by foreclosure of lien and sale thereof. They provide that in the event the stock sells for more than the amount of the debt that the surplus shall be paid to appellant or applied to any other debt appellant may be due the owner of the note. Such provisions are wholly inconsistent with any theory other than that the title and possession of the stock passed to appellant. Appellee proceeded in the court below on the theory of ownership, and the court found as matter of fact by his judgment that appellant was the owner of the stock, and foreclosed appellee's lien thereon, and ordered same sold in compliance with the agreement of the parties in that respect. Further, the record of the testimony contains repeated assertions by appellee, who is also treasurer of the Southern Traction Company, that it was a sale, of which the following is typical:

"The certificate of stock attached represents the stock purchased by Mr. Kanaman. * * * The seal of the corporation is on the stock. The stock is duly issued. * * *"

It may be that the parties never contemplated such a result from their acts, but on that we may not speculate, since it is our sole function to declare the result of the adduced facts. It is, however, argued by counsel for appellee that the transaction in the instant case is not controlled by the cases cited, for the reason that the sale to appellant was not by the corporation, but by Auchincloss, a third party. The evidence, we conclude, will not support the claim. It is not contended that Auchincloss paid the Southern Traction Company for the stock or that it was ever intended he should. On the contrary, it shows beyond reasonable dispute that he was acting in respect to the stock for the contemplated corporation. By the subscription contract appellant agreed to subscribe to ten shares of the stock of the proposed corporation, Southern Traction Company, and to pay the agreed amount to Auchincloss, fiscal agent. "Fiscal agent," in the sense used in the subscription contract, could clearly mean nothing more than the financial agent of the promoters of the corporation, whose duty it was to collect and receive the money paid on subscriptions. This conclusion is fortified by the further fact that after the Southern Traction Company was, in fact, chartered it issued and delivered the stock intended for appellant to Auchincloss, who retained the certificate in his possession until the note sued on was executed, when he indorsed it and delivered same to appellee, who in turn attached same to appellant's note in the manner we have detailed. It is true that it may be inferred from certain general statements of appellee and the witness Painter that a group of gentlemen known as the syndicate managers and as the underwriters of the subscriptions were in control of the subscription of appellant. This we also believe to be immaterial. If they were underwriters, it would mean no more than that they guaranteed to some one, presumably those who intended in the main to finance the road, that all subscriptions would be paid. It would not alter the main fact that the last transaction culminated in the issuance, delivery, and sale of stock upon credit. The method or agencies used to accomplish such result are immaterial if that is the result.

Entertaining the views we do with reference to the issuance of stock to appellee, and it appearing that the facts surrounding the final transaction have been fully developed, we feel constrained, under the authorities

cited, to reverse the judgment of the court below and render judgment for appellant, which is hereby decreed.

Reversed and rendered.