McCOY v. BANKERS' TRUST CO.

(No. 7842.)

(Court of Civil Appeals of Texas. Dallas. Jan. 12, 1918. Rehearing Denied Feb. 16, 1918.)

1. ABATEMENT AND REVIVAL ⊜═9 — OTHER ACTIONS PENDING—IDENTITY OF PARTIES.

The plea of another action pending is not available, where the plaintiff in one suit is the defendant in the other, and the defendant in the one is plaintiff in the other.

2. ABATEMENT AND REVIVAL ⊜═86 — OTHER ACTION PENDING—TIME FOR CONSIDERING PLEA.

Under the statute which requires pleas in abatement to be determined during the term at which they are filed, if the business of the court permits, failure to determine a plea of another action pending at the term at which it is filed, in the absence of showing that the court business prevented, waives the plea.

3. APPEAL AND ERROR ⊜═1039(16) — HARMLESS ERROR.

Error, if any, in disposing of plea of other action pending is harmless, where the pleader's failure to have such plea determined at the term at which it was filed waived the plea.

4. CORPORATIONS ⊜═99(1)—STOCK—VALIDITY OF ISSUE.

Action on note given in purchase of stock under contract by which the notemaker agreed to buy the stock and to pay therefor 9 months after the date of the note, in the absence of showing that stock was issued before the note was paid, and especially in view of the defendant's allegations that the stock had not been delivered, was not obnoxious to Const. art. 12, § 6, prohibiting issuance of corporate stock except for money paid and labor done or property received.

5. CONTRACTS ⊜═143—CONSTRUCTION.

Where a contract is susceptible of two constructions, one making it legal and another an illegal contract, the former construction will be adopted.

6. CORPORATIONS ⊜═80(1)—SALE OF STOCK—MISREPRESENTATIONS—FUTURE PROMISES.

Representations having reference to the future merely, however much relied on, do not constitute a cause of action or ground of defense against an action, by the principal of the agent who made such representations, on a note given for corporation stock purchased in reliance on such representations.

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Action by the Bankers' Trust Company against W. A. McCoy. Judgment for plaintiff, and defendant appeals. Affirmed.

Guy S. McFarland and Kennon & Hadden, all of San Antonio, for appellant. Towne Young and Etheridge, McCormick & Bromberg, all of Dallas, for appellee.

TALBOT, J. The appellee, a corporation of Dallas, Tex., instituted this suit against the appellant, of Atascosa county, Tex., upon a written contract of subscription for shares of the capital stock of said corporation and upon a promissory note executed and deliv-

ered to appellee at the date of said subscription contract by appellant, to recover the sum of $1,150, together with the interest and attorney's fees provided for in the note, less a credit of $80.50 paid thereon. The appellant pleaded in abatement of the suit the pendency of a prior action brought by him against appellee in the district court of Atascosa county, seeking a cancellation of the contract and note herein sued on because of certain alleged fraudulent and untrue representations on the part of the agent of appellee, which he says induced him to subscribe for the stock of appellee and to execute his note therefor. Subject to his plea in abatement the appellant answered by a general demurrer, a general denial, and by special plea, charging, in substance, that the note described in appellee's petition was executed and delivered in consideration of the issuance and agreement to deliver to appellant 100 shares of the capital stock of appellee, and that appellant agreed to purchase said stock upon the representation of appellee's agent, J. M. Moses, who solicited the purchase, to the effect that he (Moses) had been expressly authorized by W. B. Slaughter, the then president of the appellee corporation, to state to prospective purchasers of its stock who were resident in the section of the state in which appellant resided, and which was contiguous to the city of San Antonio, that appellee would open "a branch" in said city for the purpose of handling loans and collateral in Southwest Texas, in which section appellant then and now resides, and that in the matter of placing loans and handling collateral such stockholders would be given preference; that as an inducement to appellant to purchase the stock appellee's agent, Moses, made the representations stated, and that said representations were "untrue, and were falsely and fraudulently authorized to be made"; that appellee has never opened a branch office in San Antonio, Tex., nor at any other point in Southwest Texas, and never intended so to do; that at the time of the negotiations for the purchase of said stock appellant resided in Atascosa county, far removed from the city of Dallas, the home office of appellee, and without a financial institution, and therefore was not interested in the purchase of stock in appellee company; that knowing these things, the appellee's agent made the statements and representations above detailed; that, believing said representations to be true, and relying upon them, appellant agreed to purchase said stock and to execute his note therefor. The appellant further alleged that said stock had never been delivered to him. The court before whom the case was tried without a jury sustained exceptions urged by appellee to both appellant's plea in abatement and his special answer, and said plea and answer were stricken out. The court also overruled the appellant's general demurrer to appellee's petition.

In response to the request of both appellant and appellee the court filed conclusions of fact and law. These findings of fact, which we adopt, are as follows:

"On April 1⁊, 1914, the defendant executed and delivered to the plaintiff his written contract of subscription for 100 shares of the capital stock of the plaintiff corporation, agreeing to pay therefor $1,150, and further agreeing that no statement, representation, or agreement of warranty made to him by the person taking the contract should in any way operate to cancel or annul the contract, unless the same be reduced to writing and filled in on the following line. For that purpose a line was left blank, but there was no insertion therein.

"Simultaneously defendant executed and delivered to the plaintiff, which is now the legal owner and holder thereof, his certain promissory note in writing, whereby he promised to pay the plaintiff at Dallas, Tex., nine months after April 15, 1914, the sum of $1,150, with interest thereon at the rate of 7 per cent. per annum from April 15, 1914, until paid, and 10 per cent. additional as attorney's fees in the event of suit or placement for collection. Said note bears a credit of $80.50 as of date September 1, 1915. Plaintiff, after maturity of said note, placed the same in the hands of its attorneys, who brought this suit thereon under an agreement that they were to be paid the attorney's fees therein stipulated. The balance due on said note, including principal, interest, and attorney's fees, less the credit aforesaid, is the sum of $1,392.13.

"On January 14, 1915, the day on which said note matured, the defendant wrote to plaintiff at Dallas from San Antonio as follows: 'Your favor of the 8th inst. received and, in regard to the 100 shares of Bankers Trust Company stock which is due on this day, I am sorry to state that at this time I cannot see my way clear to do anything in the way of taking up my note and can only ask you for an extension of twelve months. You are of course aware of the fact that all banks are not making any loans at present and with these conditions existing one can only ask for extension. Hoping you are in position to take care of me in this matter by giving an extension as stated above, I am yours very truly, [Signed] W. A. McCoy.'

"This suit was not instituted until July 1, 1916, or more than 12 months after the maturity of the defendant's note, and the inference is that the extension requested by the defendant was granted by the plaintiff.

"Defendant's said letter suggests neither dissatisfaction nor grounds of defense, but constitutes a plain recognition of liability on his part.

"Plaintiff in open court tendered to the defendant, upon payment by the defendant of his note, the shares of stock in exact accordance with the specification thereof in the defendant's said written contract of subscription."

The court concluded that the law applicable to the facts found entitled appellee to a judgment against appellant in the sum of $1,392.13, and such judgment was rendered.

The action of the court in sustaining appellee's exceptions to appellant's plea in abatement is made the basis of his first and second assignments of error. These exceptions were: (1) That the plea in abatement failed to present any such facts as precluded appellee from the prosecution of this action; (2) that it distinctly appears from said plea that there are not pending two actions in

which plaintiff (appellee) is the same and the defendant (appellant) the same.

[1] We think there was no error in sustaining the exceptions. The appellee was not the plaintiff in both suits. It was the plaintiff in this suit, the one sought to be abated, and the defendant in the suit brought by the appellant in Atascosa county. In such case the general rule is to the effect that the plea of a prior action pending applies only where plaintiff in both suits is the same person, and both are commenced by himself, and not to cases in which there are cross-suits by a plaintiff in one suit who is defendant in the other; in other words, that where the party defendant in the prior suit is plaintiff in the subsequent suit, the first suit cannot be pleaded in abatement of the second. There are decisions to the contrary in some jurisdictions, while in others exceptions to the rule, it seems, have been recognized. The general rule stated, however, seems to be established by the weight of authority. Corpus Juris, p. 82, and cases cited under note 77; Standard Encyc. of Proc., p. 1018, and cases cited under note 91.

[2, 3] But aside from the foregoing general rule, our statute requires pleas in abatement and other dilatory pleas to be determined during the term of the court at which they are filed, if the business of the court permits, and the record shows that the plea in abatement in this case was filed during the May term, 1916, and not determined until the September term of the court, nor do we find anything in the record showing that the business of the district court was such as prevented a presentation and determination of the plea in abatement during the term at which it was filed, or that it was called to the attention of the court at that term. This being true, we think it must be held that appellant waived said plea, and that the disposition made of it furnishes no ground for a reversal of this case. Harris Millinery Co. v. Melcher, 142 S. W. 100; Smith v. First Nat. Bank of Waco et al., 187 S. W. 233.

[4] It is assigned that that court erred in overruling appellant's general demurrer to appellee's original petition filed July 1, 1916. The argument in support of this assignment is, in substance, that the petition of appellee shows upon its face that the promissory note sued on was given in payment of shares of stock of appellee corporation under a contract contemplating the issuance and delivery thereof before the payment of said note; therefore the contract and note were in violation of section 6, article 12, of our Constitution which declares:

"No corporation shall issue stock or bonds except for money paid, labor done or property actually received."

The assignment will be overruled. The original petition of the appellee charges that the appellee and the appellant entered into a written contract whereby the appellant sub-

scribed for and the appellee agreed to sell appellant 100 shares of the capital stock of appellee, and that appellant promised and agreed to pay therefor 9 months thereafter, or on January 15, 1915, $1,150; that as an evidence of appellant's obligation to pay for said stock on said date, he, in addition to executing a written contract of subscription for the stock, executed and delivered to appellee his promissory note for the principal sum of $1,150, payable at Dallas, Tex., with interest, and providing that if appellant failed to pay for the stock as agreed and it became necessary to place said contract in the hands of an attorney for collection or to bring suit on said note appellant would pay 10 per cent. additional as attorney's fees, but there is no allegation in the petition to the effect that the stock subscribed for by appellant was to be issued before the subscription price or note was paid. The appellee did, however, file a supplemental petition, in which the subscription contract in question, but not the note, was set out in hæc verba, and if it be conceded that this supplemental position should be considered in connection with appellee's original petition in passing on appellant's general demurrer and in determining whether or not it appeared upon the face of appellee's pleadings that the note in suit was given under a contract contemplating the issuance and delivery of the stock which appellant agreed to purchase before the payment of said note, still we think the appellee's petition was not, for the reason urged by appellant, obnoxious to his general demurrer. The language of the contract upon which appellant relies as showing that the parties contemplated a present issuance and delivery of the stock and the giving of the note sued on in payment therefor—that is, a sale on a credit—is as follows:

"This is to certify that I hereby purchase 100 shares of the capital stock of the Bankers' Trust Company, for which I agree to pay eleven hundred fifty dollars. * * * The further consideration is that I will extend to Bankers' Trust Company the option to purchase above-described stock should my stock be for sale."

Neither the original nor supplemental petition contains any allegation that the stock had been issued or delivered, and it is evident the contract in question was one of subscription. The language of the contract, "I hereby purchase," alone or considered in connection with that giving the appellee an option to purchase the stock from appellant in the event appellant desired to sell, does not necessarily show or imply that it was the agreement of the parties that the stock should be issued and delivered to appellant before the payment of the purchase money. On the contrary, we think the most natural and reasonable construction of the contract, the one most consistent with the nature of the transaction and which experience teaches would ordinarily or commonly be given it

by business men, is that it was not intended that the stock was to be issued until the price agreed to be paid therefor was actually paid or tendered. There is nothing in the pleadings or evidence which indicates that the stock had been issued, and the appellant expressly alleges in his answer that it had never been delivered. The very clear inference to be drawn from the record is that both appellant and appellee understood the contract to mean that the stock was not to be issued and delivered until paid for in money. So far as anything appears to the contrary appellant never asked for or demanded an issuance or delivery of the stock to him, claiming that by the terms of the contract he was entitled thereto. Indeed, as evidencing that he made no such claim or demand, he wrote to appellee nearly one year after the execution of the contract of subscription and note sued on, expressing his inability to pay for the stock as he had agreed to do, and asking for an extension of the time of payment for 12 months. In this letter there is no hint of dissatisfaction because the stock had not been issued and delivered, or claim that under the terms of the contract he was entitled to its issuance and delivery. The trial court found, as heretofore shown, that the appellee in the trial of the case, in open court, tendered, upon payment by the appellant of the note sued on, the shares of stock in exact accordance with the terms of the appellant's written contract of subscription, and the judgment rendered directs the delivery of the stock to appellant upon satisfaction thereof. We are unable to see any sufficient reason for holding that the trial court was in error in this particular, and his conclusions will not be disturbed.

[5] It is well settled that where a contract is susceptible of two constructions, one making it legal and another an illegal contract, the former construction will be adopted. The Constitution of this state simply prohibits the issuance of corporate stock, except for money paid, labor done, or property actually received. There is nothing showing that the stock subscribed for by appellant was ever issued, and, under the facts alleged, it cannot reasonably be said that the contract entered into between appellant and appellee was in contravention of our Constitution. Cope v. Pitzer, 166 S. W. 447; Horn Bros. v. Baker, 173 S. W. 474; Farmers' & Merchants' State Bank v. Falvey, 175 S. W. 833; Commonwealth Bonding & Casualty Ins. Co. v. Hill, 184 S. W. 247.

It follows from what has been said that the court did not err in admitting in evidence the note sued on, and that appellant's fourth assignment of error, complaining of its admission, is without merit.

[6] The remaining assignments of error, which are the fifth and sixth, and which are grouped in the brief and complain of the court's action in sustaining appellee's exceptions to appellant's "special answer," the substance of which has been stated in a former part of this opinion, will be overruled. A statement which is promissory in its nature, or an assurance of what will thereafter be done, is not a representation, but rather in the nature of a contract, and is not the basis of an action for deceit. So that representations having reference to the future merely, however much relied on, do not constitute a cause of action or ground of defense. It is said that a person to whom such statements are made had no right to rely on them. Smith on the Law of Fraud, § 7. The allegations in appellant's answer to the effect that appellee's agent stated to him that appellee would establish a branch office at San Antonio for the purpose of handling loans and collateral in Southwest Texas, and which were, at the instance of appellee, stricken out, do not show the representation of an existing fact, but rather a representation promissory in its nature and having reference to the future merely. This being true, the failure on the part of appellee to comply with such promise constituted no defense to this action, and appellee's exceptions to the allegations in appellant's answer setting up such matter were correctly sustained.

The record disclosing no reversible error, the judgment of the district court is affirmed.

Affirmed.