### WILSON v. BANKERS' TRUST CO.
### (No. 8245.)

(Court of Civil Appeals of Texas. Dallas. Jan. 10, 1920. On Rehearing, Feb. 28, 1920.)

CORPORATIONS ⬤➡90(7)—WHETHER STOCK HAD BEEN ISSUED JURY QUESTION.

In action on a promissory note given for the purchase price of corporate stock, evidence that the corporation made out a stock certificate which was not delivered to the maker of the note, that dividends on the stock were credited against interest due on the note, etc., *held* to make a jury question whether the stock had been "issued" in violation of the constitutional provision that no corporation shall issue stock except for money paid, labor done, or property actually received.

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Action by the Bankers' Trust Company against L. F. Wilson. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

J. C. Muse, of Dallas, and Miller & Miller, of Ft. Worth, for appellant.

Pope & Young, of Dallas, for appellee.

RASBURY, J. This is an appeal from the action of the trial court peremptorily directing verdict in favor of appellee for $1,427.60, representing the principal, interest, and attorney's fee due upon a negotiable promissory note executed by appellant in favor of appellee; the principal of the note representing the amount appellant agreed to pay for 100 shares of the preferred capital stock of appellee, a private corporation.

The issue made in the court below and presented here by appellant is, in substance, that the transaction which culminated in the execution of the note sued on was a sale on credit of the stock of a private corporation and unenforceable because in violation of the Constitution.

A fair analysis of the evidence adduced on that issue discloses the following material facts: March 14, 1914, appellant executed and delivered to appellee a contract in writing reciting, among other things: "I hereby purchase 100 shares of the capital stock of the Bankers' Trust Company, for which I agree to pay eleven hundred and fifty dollars." On the same day appellant executed and delivered to appellee his negotiable promissory note, whereby he agreed to pay appellee $1,150 on or before December 31, 1914, with 7 per cent. per annum interest thereon from date until paid, as well as 10 per cent. of the amount of the note as attorney's fees in event of suit, etc. September 1, 1914, the president and secretary of appellee signed certificate No. 345, reciting that appellant

was the owner of 100 shares "of the preferred stock of the Bankers' Trust Company, transferable only upon the books of the company in person or by attorney," etc., and attached thereto the corporate seal of the company. The certificate guarantees the holder an annual dividend out of the net earnings of the corporation, if the net earnings will pay that much before paying anything to the holders of the common stock. The certificate was never delivered to appellant. It remained at all times in possession of appellee. The corporate officials recorded the certificate on its stock register. From the date of the signing and attesting of the certificate, or September 1, 1914, appellee allowed and credited appellant on his note with sums equal to the dividends permitted to be earned by the stock purchased by appellant. Officers of appellee say such allowance was not dividends, but was merely a book entry carrying out the custom of the corporation and an agreement they had with appellant to allow subscribers, pending payment on their notes, a sum equal to the earning capacity of the stock for which they had subscribed. However, in corresponding with appellant the officers of appellee referred to the allowance as dividends. Indorsed on the note by appellee's officers was "Collat: No. 197." The numerals "197" was the register number on appellee's books of the certificate signed and held as we have recited. Appellant testified, in substance, that George Slaughter, whom he knew, and R. T. Stuart solicited him in Oklahoma City to purchase 100 shares of stock in appellee company, but that he explained to them that due to several "dry" years (appellant was a ranchman) he did not have the money, but that finally they said, "We will take your note;" to which he assented and signed the note sued on. He had no agreement that the dividends on the stock should be credited on the note. He saw the certificate of stock once in 1917 in the hands of Towne Young, attorney, before Young entered the army. Young at the same time had the note. The certificate was never in his possession. In reply to a letter from A. B. Wood, president of appellee, written in December, 1916, inquiring if he would sell his stock in appellee corporation, the appellant in reply declared that he did not at that time own any stock in appellee corporation.

Bench and bar are familiar with that provision of the Constitution which declares that—

"No corporation shall issue stock or bonds except for money paid, labor done or property actually received, and all fictitious increase of stock or indebtedness shall be void."

In most, if not all, of the cases in which this and other courts have been called upon

to apply the foregoing provision the controlling question necessarily has been, Was there, in fact, an issue of stock? for the reason that obviously there can be no violation of the Constitution until such issue. This court has held that when a subscriber delivers his promissory note to a corporation evidencing his purchase of and obligation to pay for stock in the corporation, and the corporation prepares, and its officers sign and attest, a certificate evidencing the ownership of shares by the subscriber, and the stockholder in turn permits the certificate to remain with the corporation as collateral security under a contract authorizing the sale thereof and the application of the proceeds to the payment of the note, and in addition constitutes some officer of the corporation his attorney in fact to vote his stock at meetings of stockholders, which note and collateral agreement are accepted by the corporation and the stockholder's proxy recognized, such facts in law constitute an issuance of stock. Republic Trust Co. v. Taylor, 184 S. W. 772; Kanaman v. Gahagan, 185 S. W. 619. It has also been recently held that attendance upon and voting at stockholders' meetings, holding official position in the corporation, and the receiving of dividends are manifestations on the part of the stockholder evidencing his ownership of stock, while the acceptance of the subscription contract, the entry of the name of the subscriber upon the stock book as a stockholder, permitting him to attend stockholders' meetings and vote, paying him dividends or proportional shares of the profits and gains, are concessions manifesting the purpose of the corporation to regard such persons as the owner of stock. Turner v. Cattleman's Trust Co. (Com. App.) 215 S. W. 831. In the case cited it is also held, in effect, that while the issuance of the certificate by the corporation is a circumstance to be considered in such cases the failure to issue it is not conclusive of the intention of the parties; since the certificate when issued is merely evidence of the ownership of stock, and is, in no sense, requisite to the exercise by the stockholder of all his powers as such, or to the recognition of his rights thereunder by the corporation.

We are also of opinion that, while it is true that subscriptions to stock are usually made during the formative period of the corporation and evidenced by informal contracts or subscriptions, we can see no fundamental objection to subscriptions being evidenced in any manner that the parties may adopt, including the medium of a promissory note, as in the present case; since the note only evidences the obligation of the maker to pay the amount specified at the date agreed upon, and at which time the maker would be entitled to his stock. Of course, if at the time of the making of the note the corporation did those acts which in law constitute an issu-

ance of stock the constitutional provision would apply; since such a transaction would in simple analysis constitute a sale of stock on credit by taking the obligation to pay the money at a future day, which the Constitution requires to be paid when the stock is issued.

In the light of the rules stated and the facts of the case at bar, we have reached the conclusion that the court erred in peremptorily directing verdict for appellee. We may concede, as we have intimated we should, that the simultaneous merging of the subscription contract obligation into the promissory note did not alone evidence a sale of the stock on credit, on the theory that the note was a mere fixing of the time when the payment for the stock was to be made; though we do not desire by such conclusion to deny the trial judge or jury the right to consider the circumstance that the note bore interest notwithstanding it is contended there was not a sale. Again, a certificate covering the number of shares purchased by appellant was signed and attested by the officers of appellee. It is true the certificate was never delivered to appellant. On the other hand, it is without dispute that appellee paid appellant dividends on the amount of shares covered by the certificate from the date of its issuance, which preceded the maturity of the note. True, appellee explains that such payments were not real dividends, but mere book entries intended as offsets to the interest provided for in the note. It is also true that the certificate of stock while retained by appellee was in the name of appellant, and so entered upon appellee's books. There is also an entry in appellee's books which might or might not indicate that the stock certificate was retained by appellee as collateral security for payment of the note. In addition to the foregoing, the tendency of the evidence of appellant is to show that there was a simple sale on credit; appellee taking his note, though he concedes there was no delivery of the stock and once denied owning any. He also denies any arrangement by which the dividends assigned to the stock should merely be considered as offsets. The evidence being as we have recited, it presents in our opinion a case that will warrant neither an affirmance of the trial court's action in peremptorily directing a verdict nor in rendering judgment for appellee. Ordinarily, transactions of the sort involved here do not depend upon the intention of the parties, since that intention is generally made clear by matters of record; but here we have reached the conclusion that due to the equivocal statements, acts, and conduct of the parties and the conflicting inferences to be drawn therefrom, as disclosed by the record now before us, the question of whether appellee intended to recognize appellant as a shareholder and confer ownership upon him

of the shares of stock, etc., and hence in legal contemplation issue it, is a matter of intention to be determined by the jury from the related facts.

In view of another trial we are not to be understood, in referring to any given fact or circumstance, as determining that such fact or circumstance does or does not tend to prove any material fact or should or should not carry especial weight or significance. Merely that, all evidence considered, it does present a matter about which ordinary minds would probably differ.

The judgment is reversed, and cause remanded.

### On Rehearing.

Appellee, by appropriate motion to correct, asserts that this court has found that appellant, in answer to a letter written by "A. B. Wood, president of appellee," declared that he did not own any stock in appellee corporation; while the evidence discloses that A. B. Wood was never connected with appellee, but at the time referred to in the evidence was president of Wood-Ferris Investment Company, engaged in purchasing and selling stocks. There is no testimony in the record showing that Wood was president of Bankers' Trust Company. The letter referred to by this court in the opinion, inquiring if appellant owned stock in appellee, was signed "A. B. Wood, Pres.," and does not warrant our unaccountable conclusion that he was president of appellee. The claim that he was president of Wood-Ferris Investment Company is also without support in the record. With the foregoing correction in the findings of fact, we conclude, after careful consideration, that the motion for rehearing should be and is hereby overruled.